### W. B. COFFEE v. NATHAN SILVAN.

It is competent for a person to appoint an attorney with capacity " to sue and be sued," and service on such attorney will have the same effect as service on the principal.

The title of the purchaser holding under the Sheriff's deed, not only does not rest upon the entry of the levy, or the return upon the execution; but, under our Statute, it is not affected by any mere want of certainty in the return of the officer. All the purchaser was bound to show, was a valid judgment, execution and Sheriff's deed; and though the entry of the levy and return appearing upon the execution may have been defective, it is but an irregularity of the officer, which will not defeat the title of a purchaser who is without fault.

Where the levy was on. " nine lots in the town of Lockhart," it was held that the uncertainty did not vitiate the sale.

Appeal from Caldwell. This suit was for lots in the town of Lockhart, which had been sold at Sheriff sale, under execu-

tion from a Justice's Court, against the appellee, and which had been bought by appellant and others under whom he claimed. The appellee was plaintiff below. A jury was waived. The power of attorney from Silvan read thus, "for me "and in my name to sell and convey, rent or lease all real "estate belonging to me in aforesaid county, which will appear "by the records of said county, also to sue and be sued, plead "and be impleaded, collect debts, pay demands and receipt for "the same, hereby ratifying whatever my said attorney shall "lawfully do in the premises."

The return on the execution was, "executed by levying on "nine town lots in the town of Lockhart, on the 3rd day of "December, 1850, as the property of the said Silvan. G. H. "Steiner, Sheriff. Returned satisfied, January 25th, 1851, "G. H. Steiner, Sheriff, C. C." "On the 31st day of May, "1851, appeared G. H. Steiner, and, upon motion to the Court, "obtained leave to amend his return upon the within execution, "as follows, to-wit: Satisfied the within by selling, as the law "requires, the within town property in Lockhart, upon the 7th "day of January, 1851, lots No. 3 and 4, in block No. 13, for "$25, lots No. 4, 5 and 6 in block No. 8, for $15, to W. B. "Coffee ; lots No. 1, 5 and 6 in block No. 23, for $76, to Pres. "Maulding and W. B. Coffee. G. H. Steiner, Sheriff."

"I certify that upon the date above mentioned, in open "Court, I granted G. H. Steiner, Sheriff C. C., to amend the "within *fi. fa.* as above. Witness my hand officially this 31st "May, 1851, S. B. Gray, J. P. C. C."

There was no evidence as to the terms of the advertisement. The deed recited a levy on the lots, describing them particularly, and stating that they were the same levied on by virtue of the execution recited, on the day of the date of the levy indorsed, and that they were duly advertised.

*Hamilton & Walton*, for appellant. Can service be per-

fected through an attorney in fact so as to authorize judgment ? Power may be delegated by letter of attorney to confess judgment. (Story on Agency, Chap. 2, Sec. 6 ; 2 Bacon's Abr. p. 30, Baron and feme.)

The authority, by letter of attorney, to sue and be sued, is of ancient date and well settled.

The execution was authority to the Sheriff to sell, and if property of the appellee, subject to the writ, was sold in the mode prescribed by law, after legal advertisement, the sale would not be illegal if no levy were indorsed on the execution. That the sale in this case was regular is sufficiently proved by the recitals in the deeds ; the legality of the advertisement is thus *prima facie* proved ; and if it were necessary to establish the fact by affirmative proof, that the lots in question were a part of the nine mentioned in the levy, the evidence contained in the recitals of the deeds are sufficient for this purpose, for they are therein referred to by number and block as being levied on by virtue of the execution upon which the levy is indorsed, and on the day of the date of said levy. The return of sale as indorsed on the writ would satisfy any doubt as to what particular property was the subject of levy, and the question of levy is but a question of fact.

As to the recitals in the deeds of advertisement being *prima facie* proof. (See 3 Yerger, 308 ; 7 Id. 428 ; 6 Humph. 259 ; 10 S. & M. 246 ; 2 Murph. 364 ; 3 Humph. 76.)

The sale would be valid without any indorsement of levy of execution appearing on the writ. A purchaser at Sheriff's sale is not bound to show any levy ; all that can be required of him is a judgment, execution and deed. (7 Iredell, 151.) A Sheriff's deed cannot be avoided collaterally for defect in the levy. (2 McLean, 59.)

Our Statute does not require any description of property in the endorsement of levy on the writ ; nor in fact any indorsement of levy ; and if the latter were required, it seems that it would not be bad, because it did not recite all that the Statute

requires, for this is true of a Sheriff's deed that fails to recite all that may be required by the Statute. (10 Ohio, 433; 8 Gill & Johns. 349; 4 Dev. & Batt. 414.)

And a mere variance between the levy and execution will not invalidate. (1 Alabama, 540; 2 Id. 676; 5 Id. 58; 1 Humph. 80.) Nor will a mere variance between the levy and Sheriff's deed.

The sale was, upon the principles stated, and supported by authority, regular and valid. But if irregular could not be collaterally attacked and set aside for such irregularity. (2 McLean, 59.)

*F. W. Chandler*, for appellee. Our Statute prescribes the only mode in which legal service can be perfected upon a defendant in a Magistrate's Court; one is by serving the defendant with a copy of the summons five days before Court, and the other is by publication. (See Hart. Dig. p. 527, Art. 1718, 1719 and 1720.)

That the levy made by the Sheriff is void there can be no doubt, and the most expansive rule laid down in the books will not shield it from that objection. It is laid down as an universal rule, that a levy must be sufficiently descriptive of the property to be sold to enable the purchaser to ascertain its nature and value, else sacrifice must result to the debtor or purchaser. (Barry's Lessee v. Rhea, *et al.*, 1 Tenn. R. 345; 2 Humph. 395; 3 Id. 622; 4 Id. 433; 7 Id. 179; 10 Ga. R. 74; 12 Id. 441; 13 Johns. R. 97 and 538; 2 Caines, R. 61; 1 N. Hamp. R. 93; 6 Id. 421; 4 Washb. 77, 451; 7 B. Mon. 681; 8 B. Mon. 300.)

The cases cited by the appellant are not in point.

WHEELER, J. The questions presented by the record, which require notice, are, 1st. Whether the service upon the attorney was authorized and therefore sufficient to give the Court jurisdiction? 2nd. Whether the title of the purchaser at the Sheriff's sale is void, by reason of the want of certainty in the entries and return upon the execution?

Whether the service upon the attorney was authorized and obligatory upon his principal depends upon the question whether it is competent for a party to constitute an attorney with the capacity "to be sued," or to be served with process in his place and stead. And we think it is. If one can authorize another to accept service, or even to waive process and appear and confess judgment for him, it is not perceived why he may not equally authorize him to be served with process; or substitute him, in his stead "to be sued" as well as to sue. The jurisdiction of the Court having attached by the service of process upon the attorney of the defendant, could not be defeated by his refusing afterwards to act under his power of attorney.

Upon the remaining question, as to the effect upon the title of the purchaser, of the want of certainty in the entry of the levy and return upon the execution, there is a diversity of decisions in the several States, occasioned, doubtless, mainly by the difference in their statutory provisions and regulations upon the subject. In the case of Howard v. North, (5 Tex. R. 290,) the decisions of several of the States, upon this subject, were examined; and the conclusion was adopted that the title of a purchaser at a Sheriff's sale is not affected by irregularities of the officer committed in making the sale, where such irregularities have taken place, without the concurrence or participation of the purchaser. It was laid down as the settled rule, upon the authority of adjudged cases, under Statutes similar to our own, that even a defective notice, or want of publication of the sale of property under execution, will not vitiate the title of the purchaser. It was observed that the Statute does not direct in what manner the return of the officer shall be made, or what facts shall be stated in it; and that the levy constitutes but a portion of the return, and need not be separately signed by the officer. (Id. 306-7.)

In practice, in this State, the entry of the levy upon the execution is a mere memorandum made by the officer, often with

very little care, merely to show the fact of a levy. It ought, undoubtedly, to contain sufficient certainty of description to show on what the levy was made. And in some cases this might be indispensable ; as where the Sheriff's deed cannot be produced or proved, or was not duly executed, as in the case of Miller v. Alexander, (13 Tex. R. 497,) or is otherwise defective. In such a case, the entry of the levy might be the only evidence to identify the property, and might therefore be essential to support the title of the purchaser. But where the Sheriff's deed is produced duly executed, containing a sufficient description of the property, it is otherwise. And if a defective notice, or advertisement of the sale of property, will not invalidate the title of the purchaser, holding under a deed from the Sheriff duly executed, surely, it would seem, that an insufficient entry of the levy upon the execution ought not to have that effect. For, persons proposing to purchase, look to the advertisement of the sale ; not to the entries upon the execution ; which, in fact, may not be completed until the return of the execution after the sale : and may be amended afterwards, and the amendment will then relate back to protect a purchaser. Brandon v. Snows, (2 Stew. R. 255.) A Sheriff, it has been held, may be permitted, by order of Court, to make a return upon an execution, or to amend it according to the truth of the case, at any time after the return day ; and where no return has been made, parol evidence is admissible to show that such writ was levied. (Bullit v. Winstons, 1 Munf. 269.) So, it has been held, it is not necessary in a return to an execution by which lands have been sold, particularly to describe the land sold ; the identity of the property may be shown by parol ; (Jackson v. Walker, 4 Wend. 462 ; 3 Ham. R. 272 ;) and that a sale, under execution, to a *bona fide* purchaser cannot be defeated on the ground that no levy was made until after the return day. (13 Johns. R. 96.) Where there is a Sheriff's deed containing a sufficiently specific description of the land, there can be no necessity to resort to parol or other evidence for the purpose of identity. The deed shows what

land was sold, and to that the purchaser looks as the evidence of his purchase. And when it is considered how very unimportant a matter the entry of the levy upon the execution really is, in a practical point of view, compared with the advertisement, and other matters, the omission of which has been held not to affect the title of a purchaser, (10 Sm. & Marsh. R. 246; 3 Humph. 76,) it is impossible to assign any good reason why an insufficient return in this respect, should be held more fatal in its effect upon the title, than such other irregularities, or omissions of duty by the officer, in charge of the execution. He may not make his entry of the levy until after the sale, or he may even omit to make a return upon the execution; but the purchaser should not be held responsible for his omissions of duty. They should not be held to retroact upon the sale so as to defeat the title of the purchaser who is without fault on his part. So to hold, as was said by the Supreme Court of Kentucky in Reid v. Heasley, (9 Dana, 325,) "would be to "establish a doctrine, that would expose titles derived under "execution, to an uncertainty and insecurity, that would drive "from the arena of bidders all prudent and cautious persons, "diminish competition in bidding, and tend to produce a sacri-"fice to the injury of debtor and creditor." As was said by this Court in the case of Howard v. North, "sound policy re-"quires, that property, under a forced alienation, should bring "a fair price: this will be best promoted by protecting the "rights of the purchaser from being vitiated by the irregular "acts of an officer, or from his being subjected to the peril of "sustaining, at, perhaps, a distant period, their legality, by "perishable parol evidence." (5 Tex. R. 309; and see Smull v. Mickley, 1 Rawle, R. 95, 97.)

Several decisions of the Supreme Court of Tennessee have been cited by counsel for the appellee, in which the sale has been held not to pass the title to the purchaser, by reason of the uncertainty of the levy. But these decisions appear to have had their origin in the constructions placed by the Court of that State upon their Statutes, prescribing the duties of Sher-

iffs upon execution sales. (Pound v. Pullen's Lessee, 3 Yerger, 338, 339, 340.) And yet their Courts, influenced, no doubt, by a consideration of the ruinous consequences which would flow, not only to *bona fide* purchasers, but to judgment debtors, by an opposite course, appear to have gone very far to countervail the effect of the construction placed upon their Statutes, by holding levies, which give a very imperfect, if indeed anything like a sufficient description of the land, sufficiently certain to uphold the title of the purchaser. Thus in Parker v. Swan, (3 Yerger, 80,) where the levy was on "seventy acres of land, belonging to John Doak on the waters of Stone's river," the description was held sufficiently certain. The Court said, "The title does not rest upon the description in "the levy, but the deed follows and defines its locality with "sufficient precision. All that is necessary in the levy is some "general description that will, by reasonable intendment, con- "nect it with the sale and deed, so that a tract of land differ- "ent from that levied on may not be sold and conveyed." (Id. 84.) And in a later case (Brown v. Dickson, 2 Murph. 396, 397) referring to this, the Court said, it was impossible there could be any uncertainty in this levy, unless by accident there should be two tracts of land belonging to the same person, and similarly situated in other respects. Other cases might be cited where titles were upheld upon levies even less certain than that in Parker v. Swan. (3 Yerg. R. 171, 172, 177.) Applying the principles and the reasoning of that decision to the present case, it would be difficult to hold the title of the purchaser void by reason of the uncertainty in the levy. It might be said, as in Brown v. Dickson, (2 Murph., above cited,) with some degree of plausibility, at least, that the levy in this case could only be rendered uncertain by the accidental circumstance of there being other lots belonging to the same person in the same place. The "town of Lockhart" would seem about as descriptive as the cite of the property, as "the waters of Stone's river." And as was said of the case of Parker v. Swan, the

title does not rest upon the description in the levy, but, not only in the deed, but also the return of the sale upon the execution describes the lots specifically, and with all requisite certainty, by their numbers and blocks. But we are of opinion that the title of the purchaser holding under a Sheriff's deed, not only does not rest upon the entry of the levy, or the return upon the execution; but that, under our Statute, it is not affected by any mere want of certainty in the return of the officer. All the purchaser was bound to show, was a valid judgment, execution and Sheriff's deed, (7 Iredell, 151, 2 Bay 441,) and, though the entry of the levy and return appearing upon the execution may have been defective, it is but an irregularity of the officer, which will not defeat the title of a purchaser, who is without fault. We are of opinion, therefore, that the Court erred in adjudging the title void.

There were allegations in the petition of gross inadequacy of price and fraud, of which there was no evidence. But it may be that the plaintiff was prevented from introducing evidence in support of these allegations by the opinion of the Court in his favor upon the other questions we have considered. The judgment will therefore be reversed and the cause remanded to afford the plaintiff the opportunity to make out a case, if he can, upon the ground of fraud, which will warrant the setting aside of the defendant's title.

Reversed and remanded.