JOHN CAVANAUGH, ADM'R, V. RICHARD PETERSON.

47  197
75  252
47  197
87  598

1. MORTGAGE.—It is no objection to a mortgage, under which title to land is claimed, when the mortgage is offered in evidence, that it was not recorded within three months after its execution, when the controversy is between parties to the mortgage. The statute (Paschal's Dig., art. 4986) makes the mortgage valid as between the parties to it, whether recorded or not.

2. LEVY—EXECUTION.—The sheriff is not required to take possession of land when he makes a levy, as he must of personal property, nor does he put the purchaser in possession. He is, therefore, not required to go upon land to levy an execution upon it. The levy of an execution upon land does not of itself disturb the possession of the defendant occupying it, nor does it operate a satisfaction of the judgment on which the execution was issued, until after a sale of the land for a sufficient amount.

3. LEVY—SALE.—A defective entry of a levy does not vitiate a sale of land (there being a valid judgment, execution, and sheriff's deed) when the purchaser had no notice of, and did not participate in any fraud in making the levy.

4. FRAUD—MORTGAGE—PURCHASER.—A purchaser at a sale under a decree foreclosing a mortgage upon land, the legal and equitable title to which appeared from the recorded evidence of title to be in the mortgagor, acquires title, and is not affected by the fraud of the mortgagor in procuring his title, of which the mortgagee had no notice at the time the mortgage was executed. Notice of fraud in the acquisition of title by the mortgagor brought home to the purchaser before the purchase on foreclosure, will not affect his title, if the mortgage was valid in every respect, and the mortgagee had no notice of the fraud when he accepted the security offered by the mortgage.

MORTGAGE—FRAUD—LIEN.—When a mortgage of land has been received in good faith by the mortgagee, without any notice of a defect in the mortgagor's title, the fact that the mortgage was not recorded until after a suit was brought against the mortgagor by his vendor to set aside the conveyance to the mortgagor for fraud, cannot affect the validity of the mortgage lien, when the vendor had acquired no new rights to the land in the interval before recording, and had not been induced by a want of notice of the mortgage to alter his position in regard to the land.

6. FORECLOSURE—JURISDICTION.—Though the statute provides that a mortgage on land shall be foreclosed in the county where the land

is situated, it does not follow that a judgment of foreclosure would
be void if the mortgage were foreclosed in another county. The
jurisdiction of the District Court being general, a judgment ren-
dered by it, foreclosing a mortgage on land, though the land be not
in the county in which the judgment is rendered, is binding and
conclusive as between the parties to it, to the full extent of what
is decreed, until appealed from or set aside.

7. JUDGMENT CREDITOR—LIEN—PURCHASER.—A *bona fide* judgment
creditor, without any notice of the equities of other parties, may
sell land levied on, and if his judgment is rendered in another
county from that in which the land is situated, the lien attaches by
the levy of execution, and a purchaser with notice at a sale under
said execution acquires a good title.

APPEAL from Lamar. Tried below before the Hon. Rob-
ert Taylor.

This suit was brought at the Fall Term, 1868, of the Dis-
trict Court of Lamar county, by Peterson, against James
Walker and John Finch, to try title to a tract of 575 acres of
land. Walker and Finch were tenants under Cavanaugh,
(appellant's intestate,) and at the October Term, 1868, on a
suggestion of that fact, Cavanaugh was permitted to appear
and defend. It was admitted by all, that until the 10th of
September, 1860, the title to the land was in Cavanaugh.
On that day, Cavanaugh and wife conveyed the land, with
some personalty, to a patent sewing-machine man, by the
name of Campbell, for an interest in his patent. In April,
1861, Campbell executed to Dumble & Peel a mortgage on
the land, which, being properly authenticated, was recorded
September 23, 1861. Suit was brought by Dumble & Peel
against Campbell, to foreclose the mortgage, in Harris county,
on which judgment was rendered foreclosing the mortgage,
in May, 1868. In the judgment, an order of sale was con-
tained, which was accordingly issued, directed to the sheriff
of Lamar county, June 10, 1868, and was levied on the land
July 1, 1868. Under that order the land was sold August 4,
1868, and bought by Peterson, who received a sheriff's deed,
August 5, 1868.

It appears that C. M. Cavanaugh, who had conveyed the

land to Campbell, brought suit to the Fall Term, 1861, in Lamar county, against Campbell, alleging fraud in the sale of the sewing-machine patent, on the part of Campbell, and asking a rescission and cancellation of the contract and of the deed, and restoration of title to the land.

C. M. Cavanaugh died, and at the Spring Term, 1868, suit was revived in the name of the administrator, (the appellant.) At that term a jury was waived, and the cause being submitted to the court, Campbell was adjudged to have good title. On July 3, 1868, the parties filed an agreement, to the effect that the decree was rendered on a mutual mistake of facts, and it was set aside. The compromise decree seems to have been entered by the counsel of F. W. Miner, the agent and attorney of Campbell, and in Campbell's absence. In that suit Peterson intervened, and afterwards withdrew his plea. At the Spring Term, 1869, a judgment by default was rendered, and afterwards a judgment *nil dicit*, on which a writ of inquiry was awarded, and a final judgment and decree rendered for the plaintiff, Cavanaugh.

Such were the evidences of title exhibited by the parties to this suit. Many other facts connected with the suit by Cavanaugh against Campbell are omitted as unimportant in view of the opinion. There was a verdict and judgment for Peterson, from which Cavanaugh appealed.

*Maxey & Lightfoot*, for appellant.—Appellee claims under the Campbell title. Hence, he cannot withstand this paramount equity, unless he can place himself in the condition of an innocent purchaser, in good faith, for a valuable consideration fully paid, and without notice, actual or constructive, of the appellant's prior equitable title. (Watkins *v.* Edwards, 23 Tex., 443.) If he fails to support this character, then he inevitably fails in this suit.

Was he without notice, actual or constructive, of the appellant's prior equitable title? To avoid the force of this, appellee claims that appellant is estopped from setting up

this prior equitable title by the decree at the April Term, 1868, in favor of Campbell. This was his position in the court below, and, we think, the strongest one he can assume. We do not understand the doctrine of estoppel as coming to the aid of appellee. On the contrary, it is most fatal to his case. Appellee is a privy of Campbell. 1st. Before appellee bought this land, before he had parted with a cent of his money, Campbell had, on the 3d day of July, 1868, acknowledged that the decree of April, 1868, was rendered upon mutual mistake of facts, and waived all rights under that decree, and agreed to reinstate the cause *statu quo.* This agreement was not by an attorney at law only, and, therefore, Huffman *v.* Cage does not apply, but was by an attorney in fact, fully empowered to represent him; and the well-known maxim, *qui facit per alium facit per se,* applies. Campbell, therefore, could not avail himself of estoppel. Can appellee—when this agreement was brought directly home to him from the block, before the bidding commenced, and when public announcement was made that the conveyance had been obtained from C. M. Cavanaugh by fraud; that the consideration had wholly failed; that Campbell could not place himself in condition to comply, and that appellant, as administrator, would assert his title, and the man who bought would buy a law suit,—can appellee claim that he bought without notice? Can he plead as an estoppel a decree between appellant and Campbell, which both parties asserted to be founded in mistake, and which both parties agreed to set aside, notice of which agreement appellee had on the very day and before he bought the land? What are the essential requisites of estoppel? "But the rule of law is clear that, where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This extract is taken from the opin-

ion of Lord Denman, C. J., in the case of Pickard *v.* Sears, 6 Ad. & E., 469. The case is pretty fully reported in Bigelow on Estoppel, 473, 474, 475, 476. Tested by this rule, is appellant estopped by the decree of April, 1868 ? Did the appellant, by his conduct, willfully or innocently, cause the appellee to believe the decree of that date in force, and that it would not be resisted? Did appellant induce appellee to act on that belief? By reason of that belief, so induced, did the appellee alter his previous condition ? As all these questions must be answered in the negative, we conclude that appellee gets no relief from that quarter. But the appellee must establish on this point not only that appellant had misrepresented or concealed some material fact, but that it actually misled appellee. (Bigelow on Estoppel, 473.)

If Cavanaugh and Campbell had made the agreement of July 3, 1868, to set aside the decree of the preceding Spring Term, and concealed it, or had even failed to give appellee notice thereof, and he had acted on the faith of that decree, there might have been grounds of complaint; but he had full notice, as shown by the excluded testimony of Captain Miner and Judge Bennett, reserved by bill of exceptions. If appellant had been silent at the sale, the appellee would have had a better case. "A party who negligently or culpably stands by and allows another to contract, on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving." (Gregg *v.* Wells, 10 Ad & E., 90.)

Did appellant, negligently or culpably, stand and allow appellee to contract on the faith of the decree of April, 1868, without warning him that the parties to that decree had agreed to set it aside ? Did he not in fact warn him to put no faith in that decree? Did he not tell him if he bought, he bought a lawsuit? "A waiver" has been aptly defined, "an intentional relinquishment of a known right." Did not

Campbell, if he had any rights in the decree of April, 1868, intentionally and knowingly relinquish them ?

*V. W. Hale & W. B. Wright,* for appellee.—At the time the mortgage was executed by Campbell to Dumble & Peel, (for money then borrowed,) Campbell's title to the land in controversy was clear upon the record, and he was holding, under a warranty deed from C. M. Cavanaugh, appellant's intestate, and no suit had at that time been instituted by Cavanaugh against Campbell to cancel the deed, or rescind the contract for fraud, or for any other cause.   Hence, Dumble & Peel were induced to loan money on the validity of said warranty deed, without any constructive notice of Cavanaugh's equities, or that any fraud had been practiced upon him by Campbell; and Cavanaugh, having trusted Campbell and placed in his hands the means of obtaining the money from Dumble & Peel, must, if any one, be the sufferer.

It is not pretended that Dumble & Peel had any actual notice of any latent equity in C. M. Cavanaugh at or before the date of the execution of the mortgage by Campbell to them on the land in controversy, and which mortgage was promptly recorded in Lamar county.

To defeat the title of the appellee to the land is, in effect, to prevent Dumble & Peel from subjecting the land to the payment of their debt, which would be a fraud upon them, of which they had no notice when they loaned the money to Campbell.   Nor could they have discovered any title, legal or equitable, remaining in C. M. Cavanaugh, by the use of the greatest degree of diligence in the examination of the title to the land.

The equities of the appellee Peterson, rise as high as those of Dumble & Peel, whose title and equities he purchased at a judicial sale, upon a valid judgment, valid order of sale, and a valid, legal, and regular sale under it.

Again, this is a question of a mortgage lien; not one of notice.   The execution and delivery of the mortgage by

Campbell to Dumble & Peel created and fixed a valid lien upon the land, that continued and followed it down through the judgment of foreclosure and order of sale to the appellee's purchase. If this view is not correct, then a mortgage does not create an absolute, but only a conditional lien.

ROBERTS, CHIEF JUSTICE.—Appellee Peterson brought a suit of trespass to try title for 575 acres of land in Lamar county against two persons in possession, and appellant John Cavanaugh, as administrator of the estate of C. M. Cavanaugh, intervened, as their landlord, and made a defense to the action, as the defendant, claiming the land for the estate. A verdict and judgment were rendered for the appellee Peterson.

The title of Peterson, as adduced in evidence, was as follows: a deed from C. M. Cavanaugh and wife, for the land, on the 10th day of September, 1860, to Campbell; a mortgage on the land, to secure payment of a note of $1,000, from Campbell to Peel & Dumble, executed on the 24th of April, 1861, and recorded in Lamar county, on the 23d of September, 1861; a judgment, in favor of Peel & Dumble, on the note, with foreclosure of the mortgage in Harris county, on the 6th of May, 1868; an execution, ordering the land to be sold, issued on said judgment, on the 10th of June, 1868; a levy on the land by the sheriff of Lamar county, and a sale by him, on the 4th of August, 1868, to Richard Peterson, for $230, which was paid to the sheriff, and a deed for the land executed by the sheriff to Peterson; a judgment of the Lamar county District Court, in favor of Campbell, in a suit by John Cavanaugh, as administrator, for the land, rendered at the Spring Term, 1868, (23d April.)

Appellant proved, by the sheriff, that he entered the levy on the execution, in the city of Paris, in Lamar county, and did not go upon the land to make the levy, and did not take possession of the land.

These were the facts before the jury on the trial.

The appellant objects to the chain of title made out by the appellee, upon two grounds: First, because the mortgage was not recorded within three months after its execution; and, second, because the judgment having been rendered in Harris county, and not being a lien upon the land in Lamar county, and the lien of the mortgage being lost by its being merged in the judgment, the levy was null and void because the sheriff did not go upon the land to make the levy.

The first ground, in view of the evidence before the jury, is answered by our statute, which makes the mortgage valid, as between the parties, from its date, whether recorded or not. (Paschal's Dig., art. 4986.)

In support of the second ground, that the sheriff, to make a valid levy in such a case, must go upon the land, we are referred to the case of Leland *v.* Wilson, 34 Tex., 94. This court, upon a full consideration of that case, in connection with the adverse views often held by the court previously, has decided directly the contrary more than once. (Cundiff *v.* Teague, 46 Tex., 475; Catlin *v.* Bennatt, 47 Tex., 165.)

The sheriff does not take possession of the land, as he must, of personal property, when he makes a levy, nor does he put the purchaser in possession. It would be useless, therefore, to go on the land to levy the execution; and such has not been the practice in this State.

The court charged the jury, in effect, that it was unnecessary for the sheriff to have gone upon the land in order to make the levy valid, because the mortgage lien continued up to the time of the sale. It is immaterial whether that was a correct reason or not, for excusing the sheriff from not having gone upon the land to make the levy, as he was excused from doing it, without any reason existing for not doing it. It has long been the well-established doctrine of this court, that a levy of an execution levied upon land does not disturb the possession of the defendant in the execution,

and that it is not a satisfaction of the judgment, without a valid sale of the land for a sufficient amount. (White v. Graves, 15 Tex., 187; Townsend v. Smith, 20 Tex., 470.)

It has also been held that a defective entry of levy does not vitiate a sale of land, there being a valid judgment, execution, and sheriff's deed, where the purchaser had no notice or participation in any fraud in making the levy. (Coffee v. Silvan, 15 Tex., 358; Riddle v. Bush, 27 Tex., 676.)

In reference to the facts in evidence before the jury on the trial, there is no error in the judgment in favor of Peterson, the appellee.

It is contended that the evidence offered by the appellant, and excluded by the court, upon exception thereto, constituted a full defense in favor of appellant, and that the court erred in its exclusion from the jury, which appears by the several bills of exceptions taken by appellant contained in the record.

The evidence excluded was, that the deed, executed by C. M. Cavanaugh and wife to Campbell for the land, was without consideration, and made upon fraudulent and false representations sufficient to set it aside; that said Cavanaugh instituted a suit, in the District Court of Lamar county, against Campbell, in May, 1861, before Peel & Dumble's mortgage was recorded, to set aside and annul said deed, and recover back the land; that the judgment, in 1868, in favor of Campbell, against the administrator of Cavanaugh, the appellant, before the sheriff's sale, was rendered upon a compromise founded upon a mistake of fact, which was, that Campbell had control of the said mortgage; that on account of said mistake, the attorney in fact of Campbell had agreed, in writing, with John Cavanaugh, the administrator, to set aside said judgment, and reinstate the case in court; that said written agreement was not filed in the clerk's office with the papers of said cause, because of the absence of the clerk; that at the sale of the land by the sheriff, public notice of all these facts were given by the attorney of the administrator

in the hearing of Peterson, who bought the land with full notice of them; that when, at the succeeding term of the court, the said judgment was set aside and the cause was reinstated on the docket, Peterson, by leave of court, intervened, and afterwards, by leave of court, withdrew his intervention, and that subsequently a judgment was rendered in favor of John Cavanaugh, the administrator, against Campbell for the land.

But there was no evidence offered tending to show that Peel & Dumble, at the time the mortgage was executed, had any notice of the fraud of Campbell in purchasing the land from Cavanaugh in 1861, nor was there any evidence offered tending to show that the mortgage was not valid in every respect.

Without some such evidence, all that which was offered as a defense was insufficient, and might well have been rejected by the court as not competent to affect the rights of a purchaser under the mortgage foreclosure, whatever notice of those facts he might have had at the time of the sale by the sheriff. The mortgage being valid and binding, as between Campbell, Peel & Dumble, and Cavanaugh, at the time it was executed, the fact that it was not recorded until after the suit was brought by Cavanaugh against Campbell, to recover back the land for fraud in the original trade for it, did not affect the validity of the mortgage lien. Cavanaugh had acquired no new rights to the land in the meantime before the recording, nor had he been induced, by want of notice of the mortgage, to do anything or change his position in regard to the land.

The statute provides for a mortgage on land to be foreclosed in the county where the land is situated. It does not follow from that, that a judgment of foreclosure would be void, if it was foreclosed in another county, the District Court having general jurisdiction of the subject-matter—the debt, and the mortgages to secure it. That judgment, being rendered in Harris county, was binding, and not being appealed

from or set aside, was conclusive, as between the parties to it, to the full extent of what was decreed. The land still stood upon the record as the property of Campbell, and there was no evidence that, even up to the time of the sale by the sheriff, Peel & Dumble had any right to conclude that it was not Campbell's land upon which they were enforcing their judgment.

At the time the judgment of foreclosure was rendered, 6th of May, 1868, the land was Campbell's, by a judgment in his favor, 23d April, 1868, as well as by deed of 1861, and so stood, uncontroverted, up to the time of the levy and sale of the land by the sheriff, 4th of August, 1868, so far as the title appeared of record. No bad faith can be imputed to Peel & Dumble, in any respect, in enforcing their lien.

The question, then, is, would notice, given at the sheriff's sale, that Campbell had a voidable title to the land, which might be set aside by a revival and prosecution of a suit for that purpose, prevent a purchaser, at said sale, from getting a good title to the land? The court has held, that a *bona fide* judgment creditor, without any notice of the equities of other parties, may sell the land levied on; and if his judgment is rendered in another county from that in which the land is situated, the lien attaches by the levy of the execution, and that a purchaser with notice, at a sale under said execution, would acquire a good title. (Grace *v.* Wade, 45 Tex., 522, and other cases.)

The judgment of Peel & Dumble, decreeing the mortgage lien on the land, in its force and effect, related back to the date of the mortgage, the validity of which gave character to the judgment, in respect to the lien decreed by it. It was conclusive in perpetuating and enforcing the original validity of the lien, as against Campbell. If Cavanaugh, when he brought the suit against Campbell to recover back the land, in April, 1861, had brought Peel & Dumble, as parties, into the suit, the fact of the mortgage not having been recorded up to that time, would not have been a ground for defeating

the lien of the mortgage; and, therefore, if Peel & Dumble had notice of the suit of Cavanaugh against Campbell for the land, that would be no obstacle to the enforcement of their lien, while Campbell had the legal title to, and the possession of the land, which he did, up to and after the time of the judgment foreclosing the mortgage against the land in the hands of Campbell. Having obtained such a judgment and decree for the sale of the land as the property of Campbell, they had a right to an execution, with an order of sale, in order to collect the money adjudged to them. They occupied the position, then, of judgment creditors, with a valid lien decreed in their favor upon the land. If notice to the purchaser, of any equity of Cavanaugh, which might render Campbell's title voidable, could prevent a valid sale of the land, it would render useless their judgment enforcing the valid lien, and they would have a recognized right without a practicable remedy. The purchaser at such a sale, notwithstanding the notice, stands in the place of the creditor, who has a judgment enforcing a valid lien upon the land, and gets a good title.

Judgment affirmed.

AFFIRMED.