SETH SHEPARD v. SAMUEL HUNSACKER ET AL.

(Case No. 4203.)

1. QUITCLAIM DEED.— A deed which recites that the grantor conveys "all my right, title, claim and interest in and to the following described tract of land" (describing it); "and I do forever quitclaim all my claim and interest in and to the above-named tract of land," is only a quitclaim deed, and passes no title to the land as against a prior unrecorded conveyance of the property. Rodgers *v.* Burchard, 34 Tex., 452; Harrison *v.* Boring, 44 Tex., 256; Taylor *v.* Harrison, 47 Tex., 460; 11 How., 322; Washburn on Real Property, vol. 4, 438; Wright *v.* Lancaster, 48 Tex., 255; Smith *v.* Pollard, 19 Verm., 272; 14 Kan., 148.

2. UNRECORDED CONVEYANCE — QUITCLAIM DEED — LIEN OF JUDGMENT CREDITOR.— While the lien acquired by a judgment creditor by a

levy of an execution upon land of the judgment debtor is superior to the title of one claiming under an unregistered deed, yet the lien only attaches to such title as may be in the debtor, and if he has only a quitclaim deed to the land he can have no title thereto as against a prior unrecorded conveyance of his vendor, and a sale by the sheriff passes no title to the property. Borden *v.* McRae, 46 Tex., 396; Kavanaugh *v.* Peterson, 47 Tex., 197; Grace *v.* Wade, 45 Tex., 523.

APPEAL from Navarro.   Tried below before the Hon. D. M. Prendergast.

Appellant, who was plaintiff below, filed his petition March 11, 1879, in trespass to try title, to recover of appellee a tract of three hundred and twenty acres of land in Navarro county, the headright of E. L. Folsom.

Plaintiff claimed title as follows:   1st. A deed from E. L. Folsom to W. G. Henderson, viz.:

"THE STATE OF TEXAS, *County of Madison.*

"Know all men by these presents that I, Ebenezer L. Folsom, of the county and state aforesaid, for and in consideration of the sum of $320 to me in hand paid, the receipt of which is hereby acknowledged, have this day granted, bargained, sold and conveyed unto W. G. Henderson all my right, title and interest in and to the following described tract of land as follows, to wit:   Three hundred and twenty acres of land, my headright (etc., describing the same by metes and bounds), to have and to hold all and singular the same, the above described tract of land, unto him, the said W. G. Henderson, of the county of Brazos, state of Texas.   And I do forever quitclaim all my claim and interest in and to the above named tract of land unto the said Henderson, his heirs and assigns, and against myself, my heirs and assigns, and all claims whatsoever against the said land or part thereof.   This interlineation done before the sealing and delivery of these presents.   Witness my hand and seal this the 12th of May, A. D. 1873.

(Signed)                                    " E. L. FOLSOM."

This deed was duly recorded in Navarro county on the 7th day of May, 1873.

2d. A judgment of the district court of Washington county,

in favor of A. Testard against W. G. Henderson *et al.*, for $1,000. This judgment was recorded in Navarro county on the 17th day of March, 1876.

3d. Execution issued on said judgment July 3, 1876, and return showing levy, advertisement and sale of said land, and that sale was made to plaintiff for $256 as assignee of the judgment, and the amount, less the costs, credited on the execution.

4th. Sheriff's deed to plaintiff in accord with aforesaid execution, dated August 2, 1876.

Defendants' claim of title is as follows:

1st. Transfer of the certificate by E. L. Folsom to John Faith, dated September 21, 1844.

This transfer has never been recorded nor authenticated for record.

2d. A regular chain of title from John Faith to Neblett and Beaton, the landlords of Hunsacker, most of which was of record.

The case was submitted to the judge upon an agreed statement of facts, who gave judgment for the defendants.

The conclusions of law and of fact were prepared by the judge and filed by order of court with the papers of said cause in connection with said judgment.

He recites therein the claim of title of the parties as already stated, and finds the purchase of the judgment against Henderson and assignment thereof to plaintiff, the levy and sale of the land under it, and that Shepard's bid was simply credited upon the execution issued upon that judgment, no money being actually paid, except some costs.

The defendants took actual possession of the land after the purchase of the plaintiff. The judge then proceeds:

"There is no evidence that Shepard had notice, actual or constructive, of the transfer of the certificate by Folsom to Faith.

"Looking alone to the terms of the deed from Folsom to Henderson, unaided by proofs of any fact or circumstance tending to show the intention of the parties, and there being no evidence of the payment of the purchase money,

and nothing to show whether the amount mentioned in the deed as the consideration was real or nominal, and what proportion it bore to the actual value of the land, I incline to the opinion that it is a quitclaim deed. If so, I conclude that it could not take precedence of the equitable title of the defendants.

"But whether this conclusion, as to the construction of the deed from Folsom to Henderson, and to the legal consequences that would follow, is correct or not, as the plaintiff was the owner of the judgment of Testard *v.* Henderson, and the amount bid by him at the sale of the land was merely credited on the judgment, I conclude that he could not be considered a purchaser for value. As the proof fails to show the payment of the purchase money or the sale from Folsom to Henderson (whether the deed then made is a quitclaim or not, and as the purchase made by the plaintiff could not be considered for value, nothing being paid or parted with in consequence of the purchase), I conclude that the title of the plaintiff cannot take precedence over the prior equitable claim of the defendants, notwithstanding these purchases in other respects may have both been made in good faith and without notice of said prior claim. With this view of the law and facts in the case, I give judgment for the defendants.

"D. M. PRENDERGAST, Judge."

The statement of facts fully sustains the finding of the facts made by the judge. No other material facts are stated therein except it be that the land was not occupied when Shepard bought it; that it was advertised for sale for back taxes due upon it, and he paid them; that the defendants Beaton and Neblett lived in Corsicana and never rendered the land for taxation; that defendant Hunsacker (their tenant) moved on the land a few months prior to the suit.

The assignments of error are:

1. The court erred in deciding that the deed from Folsom to Hunsacker was a quitclaim deed.

2. The court erred in deciding that plaintiff was not a *bona fide* purchaser, etc., on the ground that he bought

said land at execution sale, and the amount of his bid was credited on the judgment of Testard *v.* Henderson, owned by plaintiff.

*Shepard & Garrett* and *Read & Read,* for appellant.

*Hardy & Neblett* and *Beaton & Damon,* for appellees.

QUINAN, J.— If the conclusion of the judge to which the second assignment is pointed, that Shepard, having purchased the land and merely credited his bid upon this judgment, nothing having been paid or parted with in consequence, is not therefore entitled to judgment, be correct, there would be no necessity to discuss the first assignment of error, or to determine whether the deed from Folsom to Henderson was a quitclaim or not. But we think it is quite obvious that this is not the case, and that the judge erred in his view of the law, and in the conclusions upon which he based his judgment.

Although Shepard may not be strictly a purchaser in good faith, because his bid was placed as a credit upon his judgment, and nothing was paid or parted with in consequence of the purchase, still it by no means follows that he could not, by his purchase, acquire a valid title to the land superior to the defendants', who claim under an unrecorded deed, of which Shepard had no notice, actual or constructive. The case shows that Shepard was a creditor upon a valid judgment, and, by a valid levy upon the land, acquired a lien upon it for the satisfaction of his debt superior to the right of one claiming under an unrecorded deed prior in point of time to the deed from Folsom to Henderson, of which Shepard, at the time of the levy, had no notice. Creditors are by the law protected full as much as purchasers in good faith. They stand precisely upon the same ground. They are protected by their judgment lien or levy, just as the purchaser in good faith who pays his money is protected by his deed. And though, as we have said, Shepard might not be able to defend simply as a purchaser in good faith, for the reason that he had credited his bid upon the judg-

ment, yet he would be protected by his judgment, the levy
and the sale, and the sheriff's deed would convey to him the
land.   For it, indeed, would be absurd to say that, while
the law as to him avoids all unrecorded prior incumbrances
of which he has no actual notice, yet that he cannot pro-
ceed to avail himself of that protection by a sale under ex-
ecution at which he may be the purchaser, and when, that
he should purchase, may be the necessary means of prevent-
ing a sacrifice of his security and of collecting his debt.
Borden v. McRae, 46 Tex., 396; Kavanaugh v. Peterson, 47
Tex., 197; Grace v. Wade, 45 Tex., 523.

The material question, then, in the case is upon the first
assignment of error, whether the deed from Folsom to Hen-
derson was a quitclaim deed or not; for if it were, whether
Shepard was a purchaser of the land in good faith or not,
he could acquire no greater title to the land than Folsom
conveyed to Henderson, which, if Folsom had before then
conveyed to Faith, was none at all.

In Rodgers v. Burchard, 34 Tex., 452, it was held that a
quitclaim deed of all one's right, title and interest purports
to convey, and does convey, no more than the present inter-
est of the grantor, and that a *bona fide* purchaser under it
takes no greater interest than the grantor then had.

But this case is qualified in Harrison v. Boring, 44 Tex.,
256, and in Taylor v. Harrison, 47 Tex., 460, where it is said
that the principle in Rodgers v. Burchard "is only applica-
ble to quitclaim deeds in the strict sense of that species of
conveyance, and where its legal import is a quitclaim or
deed of release of all one's right, title and interest, which is
not intended and does not purport to convey an absolute
right to land without covenants of warranty, as contra-dis-
tinguished from a conveyance of the title, or chance for
title, which the grantor may be supposed to have."

And again: where the deed contains evidence from which
it may be fairly deduced that the absolute right to the land,
and not the title or chance of title, is sought to be bought
and sold, the purchaser may be a *bona fide* purchaser, though

the deed may have in some respects the qualities of a quit-claim deed in form.    Harrison *v.* Boring, 44 Tex., 262.

A deed, as other instruments, may be read and construed under the light of surrounding circumstances under which it was executed.    While a deed may be so plain in its terms as to require the court to construe it to be a quitclaim in one case, and an absolute conveyance of the land in another case, still its wording may be such as to raise a question whether it is the one or the other, and in that event the circumstances under which it is made, and purposes for which it is made, may be considered to fix its true character.    11 How., 322.

Assuming, then, that the deed from Folsom to Henderson may not be so plain in its terms as to require us to construe it, but that we are authorized to look outside of it for circumstances to explain its meaning, we find nothing in the statement of facts which throws any light upon it.    There is no proof in relation to its execution, or the circumstances under which it was executed, and none of value of the property at the time, or whether the consideration recited in it was in fact paid, or was merely nominal, and the land was unoccupied.

We must judge of this deed by what appears upon its face, and that only.

The material parts of a deed ordinarily are the premises and the *habendum.*

The premises is that part which precedes the words "to have and to hold," and includes the description of the thing granted.

In Folsom's deed to Henderson, the premises are, after reciting the consideration, etc., "I have this day granted, bargained, sold and conveyed to G. W. Henderson all my right, title and interest in and to the following described tract of land."    That these words do not convey, or purport to convey, the land, but only Folsom's right or claim to it, is too obvious for comment.

The *habendum* which follows is, "to have and to hold all

and singular the same, the above described tract of land, unto him, the said W. G. Henderson." The office of the *habendum* is to limit and define the estate which the grantee is to have, or the property granted. It can be applied to use only where the granting words leave the subject of ownership open to explanation. And the rule is as stated in Washburn on Real Property, vol. 4, 438, "the *habendum* may enlarge, expound, qualify or vary the estate granted in the premises, but it can never extend the subject-matter of the grant." 4 Kent., 524. If, therefore, anything is embraced in the *habendum* which is not granted, it does not pass. It cannot operate as a conveyance. Sumner v. Williams, 8 Mass., 174.

So it was held that the omission of words of grant by mistake, though the instrument was otherwise perfect as a warranty deed, was not helped by the *habendum* so as to grant the land. Brown v. Manter, 1 Foster, 528, cited in Wright v. Lancaster, 48 Tex., 255.

And in Smith v. Pollard, where a deed was in the common form of a quitclaim deed, and the *habendum* in these words: "To have and to hold the premises so that neither the said Alexis (the grantor), nor any one claiming under him, should thereafter have claim or right to the premises aforesaid," it was held that it should be construed to apply to such title and interest only as the grantor then had in the land. 19 Verm., 272.

In another case, where the words of the deed were, "We do bargain, sell and quitclaim all our right, title, interest, estate, claim and demand, both in law and equity, as well in possession as in expectation, with all and singular the hereditaments and appurtenances thereunto belonging; and we do also promise to defend the property against all claims, if any shall come up against said property," it was held to be only a quitclaim deed. Young v. Clippenger, 14 Kan., 148.

Tested by these rules and decisions, it is evident, we think, that the clause in the *habendum* in this deed, "To have and to hold all and singular the same, the above described land," must be held to refer only to the estate purported to be con-

veyed in the premises, that is, *the right, title, interest and claim* of Folsom in the land, and that the words cannot be extended to embrace the land itself.

But looking to the whole deed, and reading it altogether, without putting undue stress upon its formal divisions, we are forced to the conclusion that Folsom intended to convey, and, in fact, conveyed, simply his right or title to the land, whatever that might be. The deed is not skilfully drawn, but it bears unmistakable evidence that it was uppermost in Folsom's mind that he was making a quitclaim merely. The sentence which follows the *habendum*, and which may be considered as explanatory of the instrument, by its use of the word "quitclaim," and the apparently studious avoidance of the word warrant where it would most naturally occur, and the quitclaiming thereon of "all claims against himself, his heirs and assigns," appears to us irreconcilable with the idea of the transfer of anything more than a mere claim to the land.

The language used does not import any larger estate than that included in the premises of the deed. It is, in effect, but a mere repetition, and seems to have been used to render more emphatic his intention to part only with his claim of title.

The judge who tried this cause had opportunities, by an inspection of the instrument and its interlineations, which might possibly afford some light, of determining its character which are denied to us. His conclusion was that the deed was merely a quitclaim deed, and in that we think he did not err.

The judgment will therefore be affirmed, and we so award.

AFFIRMED.