THE NATIONAL BANK OF TEXAS v. I. LOVENBERG.

(Case No. 2028.)

1. MORTGAGE — CONSTRUCTION.— If, looking to an entire written instrument, regarded either as standing alone, or read in the light of surrounding circumstances, it appears to have been given as a security, it will be considered as a mortgage of the property conveyed by it, though it may contain no terms of defeasance. Hence, though an instrument conveying goods did not provide that it should be void on the payment of a sum of money by the grantor, yet required the grantee to dispose of the goods in a stipulated time, and to apply the proceeds to paying a debt due the grantee from the grantor, and to return to the latter the remainder of the property then left undisposed of in the hands of the grantee, it was held to be in effect a mortgage.

2. SAME.— But though in effect a mortgage, if at the time of its execution there was a secret agreement that the grantor should remain in possession of the goods and sell them, and he did so remain in possession with the consent of the grantee, and they were by him exposed to sale, *held:*

   (1) That the instrument, taken in connection with the cotemporaneous verbal agreement, and the conduct of the parties in accordance therewith, was clearly within the prohibition of the seventeenth section of the act of March 24, 1879, regulating assignments for the benefit of creditors.

   (2) Though that section was enacted solely in reference to merchants, it was passed with the general design to prevent collusion between debtor and creditor to the prejudice of all others, and a mortgage with a cotemporaneous verbal agreement that the mortgagor shall retain possession of the goods and sell them, is, as to creditors, void.

3. BRIEFS.— Briefs of counsel printed with a type-writing machine, when over eight pages long, will not be considered by the court as a compliance with the rules regulating briefs of counsel; nor will they if less than eight pages, unless the type-writing is clear and legible.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

I. Lovenberg, statutory assignee of Carl Schwarz, brought suit against appellant to recover -the value of a stock of goods, notes, book accounts and choses in action of the value of $30,000; alleging

that all of said property had been legally conveyed and transferred to him by Carl Schwarz by deed of assignment, and had been previously owned by said Schwarz, and daily exposed to sale by him in the regular course of business. That, after the execution of the deed of assignment, the goods and choses in action were duly delivered to him by Schwarz, and that he took and held possession of them. That afterwards appellant by force and arms dispossessed appellee, took possession of all of said property and converted the same to its own use.

Appellant answered by general denial. A jury being waived the cause was submitted to the court. Judgment rendered for appellee in the sum of $16,954.30.

The instrument construed in the opinion is as follows:

"State of Texas, }
County of Galveston. }

"Whereas, I, Carl Schwarz, am justly indebted to the National Bank of Texas in a large sum of money, to wit, between the amount of $18,000 and $20,000, as it is now estimated; and whereas, I, said Carl Schwarz, am anxious to pay to the said National Bank of Texas all that I owe to it, now, therefore, by these presents, I do hereby assign, transfer and deliver unto the said the National Bank of Texas, all and singular my stock of goods, wares and merchandise in and belonging to my business in the city and county of Galveston, carried on in the store-house on Tremont street, between Mechanic and Market streets, and also all goods in the custom-house at Galveston, belonging to me, and all of my outstandings of whatever kind whatsoever. And the same as here transferred and delivered shall be itemized and invoiced at once by the said the National Bank of Texas, and the same attached hereto as an exhibit, to be marked A; and it is understood that the said the National Bank of Texas shall within ninety (90) days from this date realize on the said goods, wares and merchandise, by sale thereof as may in its judgment seem best, either on credit or for cash, or at public or private sale, and apply the proceeds to the satisfaction of the indebtedness to the said the National Bank of Texas. And the outstandings shall be collected by said National Bank of Texas as best can be done at the earliest practicable time without hazard to the collection, and when collected the proceeds shall be applied as collected to the satisfaction of said indebtedness. In the mean time, the exact amount of indebtedness to the said the National Bank of Texas, by me, said Carl Schwarz, shall be arrived at, and if there should at any time remain any goods or outstandings, or money as

collected after full satisfaction of said indebtedness, together with the reasonable costs of *executing this power*, including $50 as counsel fee in the premises, then the balance shall be turned over to me, the said Carl Schwarz.

"Witness my hand and seal, June 9, 1883.

"CARL SCHWARZ.    [L. S.]

"Witness:

"F. WOLVERTON.

"F. ANDLER."

This instrument was executed and delivered to the bank, June 9, 1883, proven up for record by one of the subscribing witnesses, July 11, and filed for record as a *chattel mortgage*, July 12, 1883.

The court, both in its conclusions of fact and of law, decided the instrument to be a mortgage.

The conclusions of fact found by the court cover twenty-five pages of the transcript, while the legal conclusions based thereon are quite lengthy, covering thirteen pages; both are too lengthy for insertion.

The court found that the bank on the day of execution of the conveyance made a verbal agreement with Schwarz by which Schwarz was to accept employment from the bank and remain in the store where the goods were, to represent the bank in selling the goods and in collecting the accounts; that Schwarz accepted this employment and proceeded to sell the goods and collect the accounts, and to pay over the proceeds of sales and amounts collected every week to the bank; that the bank continued to receive the reports and collections from Schwarz up to about August 5, 1883, when the bank sent two of its agents to take an account of stock on hand and to supervise the transactions of Schwarz; that the agents of the bank continued to attend this place of business daily, and one of the agents of the bank remained in the store all day, leaving only at night; and that their business was to direct and supervise the sale of the goods and collections, and to see that a proper accounting was made by Schwarz, who was allowed to sell and collect as the agent of the bank, under the verbal contract with the bank.

On the night of the 16th day of August, 1883, the store was closed under the supervision of one of the agents of the bank, Schwarz taking the key.

On the morning of the 17th of August, 1883, by 10 o'clock A. M., Schwarz had made and executed a statutory assignment for the benefit of his creditors, with the acceptance of I. Lovenberg, as assignee, duly indorsed.

The only property claimed by Schwarz was that contained in the store in which the goods transferred to the bank were situated, together with book accounts owing to him in the business conducted by him up to that time, including those transferred to the bank.

The court found that Schwarz continued, after June 9, 1883, to buy goods on his own account and credit, as a merchant doing a regular business, and that he did not leave the premises where he had been up to June 9, 1883, when he made the transfer to the bank, and the bank did not dispossess him as to the public. The court found that the bank failed to record in time the conveyance from Schwarz.

*McLemore & Campbell*, for appellant, filed a brief taking issue with the court below as to its conclusions both of law and fact, and cited: Seale *v.* Duffy, 4 Penn. St., 274; Luchenbach *v.* Brickenstein, 5 W. & S., 145; Moody *v.* Litton, 2 Ired. Eq., 382; Frow *v.* Downman, 11 Ala., 880; Ledger *v.* Boaffe, S. C., 475; Van Heusen *v.* Radcliffe, 17 N. Y., 580; Corning *v.* White, 2 Paige, 567; Haggerty *v.* Palmer, 6 Johns. Ch. 437; Walker *v.* Miller, 11 Ala., 1067; Thorpe *v.* Dunlap., 4 Heisk. (Tenn.); Corn *v.* Sous, 3 Metc. (Ky.), 391; Roberts *v.* Corbin, 25 Iowa, 315; Stow *v.* Yarwood, 20 Ill., 497; Reed *v.* Sands, 37 Barb., 185.

*M. E. Kleberg, Robert G. Street* and *Labatt & Noble*, for appellee, cited: Peiser *v.* Peticolas, 50 Tex., 638; Acts 1879, chapter 53, page 57, sec. 17; Appendix R. S., page 8, sec. 17; Jordan *v.* Brophy, 41 Tex., 283; Baldridge *v.* Scott, 48 Tex., 178; Acts 1872, ch. 127, p. 134, sec. 1.

WILLIE, CHIEF JUSTICE.— We think it clear that the instrument executed by Carl Schwarz in favor of the bank is a chattel mortgage providing on its face for a lien upon a stock of goods and choses in action, to secure the payment of an indebtedness due from Schwarz to the bank.

"The mere fact that an instrument does not contain terms of defeasance cannot be at all decisive in determining the question whether it shall be considered a mortgage or not. If from the entire instrument, either standing alone or read in the light of surrounding circumstances, it appears to have been given as a security, it must be considered as a mortgage." Cooper *v.* Brock, 41 Mich., 490.

Whilst the present instrument does not provide that the conveyance of the goods shall be void upon the payment of a sum of money by the grantor, it does require the grantee to dispose of the

goods within a specified time, and apply the proceeds to a debt due
him from the maker of the instrument, and to return to the latter
the remainder of the property then left undisposed of in the hands
of the grantee.   It is, in effect, a conveyance with power to sell for
the payment of a debt, the grantee being required to proceed to
foreclose by sale, as in case of failure to pay the indebtedness when
due.   The property is held by the grantee just as it is by a mort-
gagee, with power to sell at private sale, after default in payment
of the debt secured by it has occurred.

The present instrument does not provide upon its face that the
grantor shall continue in possession of the goods, and expose them
to sale in the regular course of his business as a merchant, yet such
is shown to have been the understanding of the parties at the time
the deed was made, and the construction placed upon it by them.
The goods did continue in the possession of Schwarz, with the con-
sent of the bank, and were daily exposed to sale, the business being
under the control of the grantor.   To hold such an instrument valid
because it did not itself provide for its own death blow would be to
render the provisions of the act wholly nugatory.

The object of the statute would be defeated if, by a secret agree-
ment between the parties, which they could not incorporate in a
mortgage without invalidating it, creditors could be deprived of all
recourse against the property mortgaged in fraud of the statute.

And so as to agreements that the mortgagor shall remain in pos-
session and control of the business as agent of the mortgagee.   The
validity of a mortgage with such an agreement attending its execu-
tion must depend solely upon whether or not the effect is to allow
the business to be continued under control of the mortgagor in the
same manner as before the instrument was made.   This is the result
which the law proposes to prevent, and it cannot be thwarted of its
object by any verbal agreement that brings about practically the
prohibited effect.

The present instrument, taken in connection with the agreement
accompanying it, and taking into consideration the manner in which
it was construed and carried out by the parties, is clearly within the
prohibition of the seventeenth section of the statute of March 24,
1879, regulating assignments for the benefit of creditors.   The in-
tention of that statute was to encourage an equal division of all the
assets of an insolvent amongst his creditors; and, with the consent
of his creditors, to relieve him of the debts due them upon his mak-
ing such an assignment fairly and honestly.   To carry out these de-
signs it was necessary that there should be no collusion between the

debtor and any of his creditors, whereby any portion of his property liable to execution should be reserved from the assignment, either for the benefit of the assignor or of the creditor with whom he had colluded. Hence the statute in its ninth section renders void all conveyances made by the assignee previous to the assignment, and in contemplation of it, with intent to delay or defraud creditors, unless made to a purchaser in good faith for value who had no reason to believe that the debtor was conveying for the above purpose. The seventeenth section is enacted solely in reference to merchants, but it was passed with the same general design, viz., to prevent collusion between the debtor and one or more creditors to the prejudice of all others. A merchant, if embarrassed and unable to continue his business and pay his debts, must not bargain with some creditor for a continuation of his business and a control of his stock, upon an agreement to pay such creditor's debt out of the sales of goods in the usual course of business. He must not continue business as before, protected by a mortgage which gives him the privileges of a merchant and saves his stock from being responsible for the debts of creditors generally.

If such a transaction is upheld, there will be no inducement for merchants to make general assignments for the benefit of creditors; nor any surrender of their stock in trade for the purpose of paying debts. They will prefer, at the expense of the payment of one debt, to purchase the privilege of continuing a business by means of which they will reap a portion of the proceeds, which could otherwise be used in the payment of their other indebtedness.

Such transactions are plainly in contravention of the general purposes of the statute. It was the evident intention of the law to avoid, in all cases, a conveyance made in contemplation of a general assignment with intent to prevent a portion of the debtor's property from being administered for the benefit of creditors, when the grantee was aware of that intention; and in case of merchants, to avoid it under the circumstances mentioned in the seventeenth section of the statute, regardless of any contemplated design of making an assignment. By avoiding such transactions a statutory assignment could be compelled, or the law left to take its course in favoring the diligent and protecting the innocent creditor against collusion between the debtor and a former creditor for the sole and mutual benefit of these two alone. We think the deed from Schwarz to the bank was void under the above statute, and the court did not err in so declaring it.

We think, too, the amount of damages found by the judge is fully

supported by the evidence; and there being no doubt as to the trespass committed by the appellant in its illegal seizure of the goods and taking them from the possession of the assignee, we can see no error in the judgment, and it is affirmed.

The appellant's brief is thirteen pages in length, and is printed with a type-writing machine. Some of the copies are upon thin paper and almost illegible. The rules of the court are not complied with by printing briefs with a type-writer, when they consist of more than eight pages; and when badly copied and upon thin paper they are unacceptable, no matter what may be their length. Hereafter no brief of over eight pages will be received when printed in this way; nor even when of less length, unless the type-writing is clear and perfectly legible. Judgment affirmed.

AFFIRMED.

[Opinion delivered March 17, 1885.]