BEAUMONT RICE MILLS v. R. L. BRIDGES ET AL.

Decided March 7, 1907.

**1.—Planting Crop—Partnership—Joint Owners.**

Where, by the terms of a contract for raising a crop of rice, W. furnished the land, the teams, tools, one-half of the sacks, the seed rice and paid for the threshing; and B. furnished the labor for cultivating, harvesting and threshing the rice, and shelter and feed for the teams and repairs to tools and machinery and furnished water for irrigation, and the gross proceeds were divided between them, W. and B. were not partners but joint owners in the crop. An agreement to share the gross receipts does not constitute a partnership when there is no common stock or joint capital. To constitute a partnership there must be an agreement to share the profits of the enterprise as profits.

**2.—Chattel Mortgage—Record—Extent of Notice.**

When B., one of two joint owners of a crop, with the authority of W., the other joint owner, executed a mortgage upon the entire crop in his own name, the mere record of such mortgage in the absence of actual knowledge of its existence is not notice to a subsequent vendee or mortgagee under W. that B. had authority to mortgage W.'s interest in said crop, and such subsequent vendee or mortgagee may hold W.'s interest in said crop as against the mortgage executed by B.

**3.—Apportionment of Costs—Discretion of Court.**

The trial court may for good cause stated on the record apportion the costs of suit among the parties litigating. Such action held proper in the present case.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Crook, Harris & Lawhon,* for appellant.—If Walker and Bridges were joint tenants in the crop, then the direct, immediate and sole object of their combination of capital, energy, labor and skill, was profit, and under the American authorities, without controversy, they were partners as to third parties whether they intended to inaugurate such a relation or not. Randall v. Meredith, 11 S. W. Rep., 170; Cothran v. Marmaduke, 60 Texas, 370; Rahl v. Parlin & Orendorff, 64 S. W. Rep., 1007; Fouke v. Brengle, 51 S. W. Rep., 519; Dilley v. Albright, 19 Texas Civ. App., 487; Miller v. Marx, 65 Texas, 132; Brinkley v. Harkins, 48 Texas, 226; Galveston, H. & S. A. R. R. v. Davis, 23 S. W. Rep., 301; Stevens v. Gainesville Bank, 62 Texas, 502; Bradshaw v. Apperson, 36 Texas, 138; Kelley, etc., v. Masterson, 15 Texas Ct. Rep., 820; Burnley v. Rice, 18 Texas, 497; Torbert v. Jeffrey, 61 S. W. Rep., 823; Pleasants v. Fant, 22 Wal, 116; 22 L. Ed., 781; Berthold v. Goldsmith, 24 Howd., 541 (16 Lawyer's Ed., 764.); Cleveland v. Anderson, 2 Texas App. Civ., secs. 146-148; Lewis v. Wilkens, Phil Eq., 303; cited in note, 37 Am. Dec., 322; Reynolds v. Poole, 37 Am. Rep., 607 (84 N. C., 37).

A chattel mortgage executed by an agent, with full authority, in his own name, is valid, as between his principal and the mortgagee. Southern Pine & Cypress Co. v. Bruce Lbr. Co., 15 Texas Ct. Rep., 981; Sanger v. Warren, 91 Texas, 472; Texas Land & Cattle Co. v. Carroll, 63 Texas, 48; Heffron v. Pollard, 73 Texas, 96; 1 Clark & Skyles' Law of Agency, sec. 458; Huffcutt's Elements of Law of Agency, secs. 123, 124.

A chattel mortgage executed by an agent, with full authority, in who is also one of the joint tenants of the land upon which the crop is to be grown, with full authority from the other joint tenant, and duly filed for registration, is constructive notice to all innocent purchasers, lien holders, creditors, etc., although executed in the name of the agent and joint tenant alone, and although the other joint tenant's name does not appear in the mortgage. Gravity Canal Co. v. Sisk, 15 Texas Ct. Rep., 984; Calais Steamboat Co. v. Van Pelt, 2 Black, 372; Cowdry v. Vandenberg, 101 U. S., 572; 1 Mechem on Sales, secs. 157-164.

Walker's position was worse, or certainly no better than, a mere cropper. He did not even have a lien on the crop to secure his interest

in the enterprise, and a purchaser or mortgagee of the whole crop from Bridges, acquired a good title as against Walker and those claiming under him. Tignor v. Toney, 35 S. W. Rep., 881; Brazier v. Ansley, 51 Am. Dec. (N. C.), 408, and note; Rogers v. Collier, 23 Am. Dec. (S. C.), 153; Hammock v. Creekmore, 3 S. W. Rep., 180; Wood v. Garrison, 62 S. W. Rep., 728; Adams v. McKesson, 91 Am. Dec., 184 (Pa.); McNeeley v. Hart, 51 Am. Dec., 377 (N. C.).

*Chilton & Chilton,* for appellees.

REESE, ASSOCIATE JUSTICE.—This suit was instituted in the District Court by the Beaumont Rice Mills against R. L. Bridges, A. C. Walker, Mrs. A. C. Walker (mother of A. C. Walker), and the Port Arthur Rice Milling Company to recover money advanced and goods sold to defendant Bridges to enable him to make a rice crop, and to foreclose a mortgage executed by Bridges upon the rice crop and certain horses and mules. It was alleged that Bridges was either a partner with A. C. and Mrs. Walker in the raising of the rice crop, or, in the alternative, that there was a partnership between Bridges and A. C. Walker, and Bridges acted·as partner and agent of the partnership in contracting the indebtedness and executing the mortgage sued upon. Pleading further in the alternative it was alleged that if there was not a partnership as alleged, Bridges was an agent of A. C. Walker and was authorized as such agent to contract the indebtedness and execute the mortgages sued upon. The Port Arthur Rice Milling Company was made defendant upon an allegation that it had converted to its own use certain rice covered by the mortgage.

Both A. C. Walker and Mrs. A. C. Walker answered denying the partnership and the agency of Bridges to bind them or either of them in contracting the indebtedness, or in executing the mortgage. It was alleged that A. C. Walker and R. L. Bridges owned the crop in question as tenants in common as "croppers on shares" each owning an undivided one-half interest in the crop, and they set out a copy of the contract between A. C. Walker and Bridges. Mrs. Walker further pleaded that A. C. Walker was indebted to her on a promissory note for $5,000 subject to certain credits, and that the same was secured by a mortgage on the mules covered by the mortgage executed by Bridges to plaintiff and that on February 25, 1904, A. C. Walker executed to her a bill of sale of his one-half of the rice crop aforesaid in consideration of said indebtedness and for the further purpose of getting the matter in such shape as to enable her to procure supplies in order to raise said rice crop, which A. C. Walker was to furnish under his contract with Bridges. It was further alleged by her that she did execute a mortgage on her half of the crop to the Port Arthur Rice Milling Company upon which she procured such supplies, and that she got three hundred and eighteen sacks of the rice crop of the value of $572.72, which she turned over to the Port Arthur Company upon said debt. The rice so delivered paid the debt due the Port Arthur Company and left a balance of $46.75 to which she claims she is entitled. It was alleged that plaintiff had converted to its own use the mules

and horses covered by the mortgage, and she prayed for foreclosure of the same against A. C. Walker and plaintiff.

The Port Arthur Rice Milling Company answered setting up their mortgage on the rice delivered to them, which it claimed was superior to plaintiff's lien, want of notice, and that they had advanced to Mrs. Walker upon the mortgage $528.97, leaving a balance in its hands of $46.75 after appropriating the proceeds of the three hundred and eighteen sacks of rice turned over to it by Mrs. Walker.

Bridges answered admitting most of the allegations in plaintiff's petition and claimed that Mrs. Walker had taken nineteen sacks more than her one-half of the rice crop for the value of which he prayed judgment.

There was a trial with a jury and the effect of the judgment was to sustain the claim of the Port Arthur Rice Milling Company under their mortgage to so much of the proceeds of the rice turned over to them by Mrs. Walker, under the mortgage, as was necessary to liquidate its debt, and adjudging the balance of $46.75 and interest amounting to $49 to plaintiff under the mortgage executed by Bridges. Mrs. Walker also had judgment against plaintiff for the value of the mules and horses, less $19 the value of nine and a half sacks of rice which under the charge of the court the jury found was received by Mrs. Walker out of the rice crop over and above her one-half thereof. From the judgment the plaintiff appeals.

The controversy in this court arises upon the issues, first, as to whether Bridges and Walker were partners in the business of raising the rice crop, or merely joint tenants, as "croppers on shares." Second, whether if they were not partners the mortgage executed on the entire rice crop by Bridges was done with the authority and consent of A. C. Walker as to his one-half. Third, whether Mrs. Walker, as purchaser, under her bill of sale, and the Port Arthur Milling Company under its mortgage from her, or either of them, were innocent purchasers without notice of the fact that Bridges, in executing the mortgage in his own name upon the entire rice crop, acted as the agent and with the consent and authority of A. C. Walker to mortgage the entire crop.

The effect of the charge of the court was to instruct the jury that Bridges and A. C. Walker were not partners under the written contract between them for raising the crop. The court instructed the jury to find in favor of appellant against the Port Arthur Rice Milling Company for $49, being the balance remaining in its hands of the proceeds of sale of the rice turned over to it by Mrs. Walker under the mortgage after satisfying the mortgage debt. This instruction could only result from the finding by the court, as established by the undisputed evidence, that the mortgage on the entire crop by Bridges was given with the consent of A. C. Walker and in such a way as to convey his half also, and that Mrs. Walker was not an innocent purchaser without notice of this fact under her bill of sale, but that the Port Arthur Rice Milling Company in taking the mortgage from Mrs. Walker, who had a bill of sale from A. C. Walker, were not affected with notice of the facts by virtue of which the mortgage from Bridges to appellant conveyed also A. C. Walker's half of the crop. No issue appears to be made as to the superior right of Mrs. Walker to the horses

and mules under her mortgage. They belonged to A. C. Walker. This mortgage was executed by A. C. Walker to Mrs. A. C. Walker, his mother, to secure a valid indebtedness of $5,000 and was executed and duly recorded some time prior to the transactions with regard to the rice crop. Undoubtedly under the undisputed evidence Mrs. Walker was entitled to recover on her cross-action upon the mortgage against appellant the value of these horses and mules which had been mortgaged by Bridges, along with the rice crop, to appellant and taken by them under the mortgage with Bridges' half of the rice crop.

Assignments of error from the first to the eighth assail the charge of the court in assuming that there was no partnership between Bridges and A. C. Walker in making the rice crop, and the contentions of appellant's counsel upon this, the most important issue in the case, are presented with much force.

The agreement under which the crop of rice was to be raised was in writing and is as follows:

"The following agreement entered into this the 26th day of October, 1903, by and between A. C. Walker of Nederland, Texas, or Houston, Texas, and Lee Bridges of Nederland, Texas, sets forth as follows:

"Whereas the parties hereto have agreed to raise a crop of rice during the season of 1904, of the proceeds of which the parties hereto are to receive each one-half, provided that said parties carry out the articles of this agreement, as hereinafter set forth; also, it is understood that the proceeds of any other work is to be divided evenly between the parties hereto. The said A. C. Walker agrees to furnish the land upon which the rice is to be grown, four good mules and two good horses, harness, plows, drills, harrows, etc., the necessary amount of seed rice and all tools other than a threshing rig. The said A. C. Walker agrees also to pay the bill for the threshing, furnish one-half of the sacks. The said Lee Bridges agrees to furnish all labor requisite to the raising, harvesting and threshing of said crop, to furnish shelter for the mules and machinery, himself and any hands he may require, also the feed of all the stock requisite to this contract, especially the six head furnished by A. C. Walker; also the said Lee Bridges agrees to furnish water for the proper irrigation of the said land and to make all repairs necessary to tools and machinery at his own cost and to return unto A.. C. Walker all his property in good condition, allowing for due wear and tear, on the first of December, 1904. In witness whereof we, the aforesaid parties, hereunto set our hands on the day and year above first written.          (Signed) A. C. Walker,
                                        Lee Bridges."

. The evidence showed that it was at first contemplated that they were to farm upon a tract of land known as the Boss land, upon which A. C. Walker had farmed the preceding year, but for some reason they could not get this tract and Bridges then rented from another party the tract of land upon which the crop was raised. It is quite clear from the evidence that although Bridges rented this land, it was considered as done under the contract, and in pursuance of A. C. Walker's contract to furnish the land. Bridges proceeded, under the contract, to plant and raise a rice crop on this land with the teams

and implements furnished by Walker in all respects as though Walker instead of himself had rented the land.

The land rent of two sacks of rice per acre was paid in effect out of Walker's half of the crop, offsetting the water rent of two sacks per acre which was to be paid by Bridges under the contract. Bridges testified that both land rent and water rent were paid out of the entire crop, but as Walker was to pay the one and Bridges the other such payment was the same in effect as though the land rent had been paid out of Walker's half of the crop and the water rent out of Bridges' half. In legal effect then the contract must be construed as though Walker had been the owner or lessee of the land; whether owner or lessee would make no difference. Under the contract then Walker was to (and did) furnish the land, the teams, tools, one-half of the sacks and the seed rice and to pay for the threshing. Bridges was to furnish the labor for raising, harvesting and threshing, shelter and feed the teams, make all necessary repairs to tools and machinery and furnish the water for irrigation, and the gross proceeds were to be equally divided.

We have examined carefully all of the authorities cited by appellant in its brief and we do not think any of them applicable to this case. In all of them the parties charged as partners were to share in the profits of the enterprise *as profits,* or were to receive a portion of the profits *as profits,* either for services performed or money or property furnished towards carrying out the joint enterprise. (Cothron v. Marx, 65 Texas, 132; Stevens v. Gainesville Bank, 62 Texas, 501; Kelley v. Masterson, 15 Texas Ct. Rep., 820; Torbert v. Jeffrey, 61 S. W. Rep., 823.) In the contract between Bridges and Walker there was no community of interest in the losses, the profits, or the capital of the business. One of them might reap a profit and the other sustain a loss. It was substantially the same kind of contract as that of a landowner who agrees with a tenant to furnish the land, teams and tools, the tenant to furnish the labor and raise and gather the crop, the crop to be divided. These contracts are in general use among farmers and landowners.

"An agreement to share the gross receipts does not constitute a partnership where there is no common stock or joint capital" (1 Bates Part., sec. 58), and the author proceeds: "But where there is no common stock or joint capital a division of the gross receipts either arising from joint labor or labor upon property of another, does not constitute a partnership for it does not involve the division of profit or loss, and the benefit is not dependent on the success of the enterprise."

Quoting further from the same author (section 61): "The fact that the recipient of part of the gross receipts is to furnish part of the expenses or tools or material, as well as labor, does not alter the result. Thus in cultivating land, where an overseer or cultivator is to furnish part of the teams or pay part of the labor and the crop is to be divided, it is not a partnership, but is a leasing, or an employment, or a tenacy in common of the crop, according to the nature of the enterprise." (Moore v. Smith, 19 Ala., 777; Donnell v. Harsh, 67 Mo., 170; Blue v. Leathers, 15 Ill., 31; Putnam v. Wise, 1 Hill,

239; Day v. Stevens, 43 Am. Rep., 734; Brown v. Jaquette 39 Am. Rep., 770.) In Autrey v. Freize (60 Ala., 587), there was an agreement to share the crops and not explicitly to share the profits, and it was held to be a partnership, but the decision was rested on a provision in the agreement that the expenses were to be paid jointly and when these were paid the crops were to be divided equally, which element is lacking in the present case. For a review of the authorities see note to Reynolds v. Pool (37 Am. Rep., 609).

Our conclusion is that the contract between Bridges and Walker did not constitute them partners, but only joint owners of the crop, and the court did not err in so holding.

As to the ninth, tenth and eleventh assignments of error the court seems really to have assumed that Bridges was authorized by Walker to mortgage the entire crop. The instruction to the jury to find for the appellant the $49, balance of the proceeds of the rice turned over to the Port Arthur Rice Milling Company after satisfying the mortgage given by Mrs. Walker, can not be otherwise explained. Clearly if Bridges was so authorized the mortgage would be good as to Walker's one-half of the crop, as against both Mrs. Walker's claim under her bill of sale and the Port Arthur Company under its mortgage, unless they were innocent purchasers for value and without notice. The court seems to have assumed that Mrs. Walker was not such innocent purchaser, otherwise she would have been entitled to the $49, and the ruling is made the basis of a cross-assignment of error by her. The court likewise assumed that the Port Arthur Company as to its mort· gage debt was an innocent purchaser for value and without notice. This ruling is made the basis of the twelfth and thirteenth assignments of error. The undisputed evidence showed that the mortgage by Bridges upon the entire rice crop was executed January 8, 1904, and filed for registration February 2, 1904. On February 25, 1904, A. C. Walker executed to Mrs. A. C. Walker a bill of sale of his one-half of the crop of rice. On March 10, 1904, Mrs. Walker executed to the Port Arthur Company a mortgage on this half of the crop of rice "to be by me raised during the year 1904" upon the land described as tract No. 9, T. & N. O. Survey, containing one hundred and forty-seven acres and owned by C. B. Lewis in Jefferson County, which was the land farmed by Bridges and Walker under their contract. Upon this mortgage the Port Arthur Company made advances amounting to $528.97. The undisputed evidence shows that the Port Arthur Company had no actual knowledge of the mortgage executed by Bridges on the entire crop, and no notice of the fact that Walker had authorized Bridges as his agent to execute such mortgage in his own name alone. While the record of the mortgage was constructive notice that Bridges had executed such mortgage there was nothing to put either Mrs. Walker or the Port Arthur Company upon notice that in doing so he had so acted, with the authority and consent of A. C. Walker, as to make the mortgage binding upon his half of the crop. If they had had actual knowledge of such mortgage such actual knowledge might have been sufficient to put them upon inquiry and suggest an investigation as to Bridges' authority to execute such a mortgage, but the mere record of a mortgage by Bridges was not constructive notice of such

a mortgage as, by virtue of an agency not known to them, would convey Walker's interest in the crop. The court did not err in assuming as the result of the undisputed evidence that the Port Arthur Company to the extent of the advances made by it upon the mortgage given by Mrs. Walker, the owner thereof by bill of sale from A. C. Walker, was entitled to be protected as innocent purchasers without notice and for value. The evidence tended to show that Mrs. Walker, while having no knowledge actual or constructive of the mortgage executed by Bridges to appellant at the time she took the bill of sale from A. C. Walker to his half of the crop, did not in fact part with any valuable consideration therefor, but took it as a credit upon her pre-existing indebtedness. In this view there was no error in refusing to give Mrs. Walker judgment for the $49, and in instructing a verdict for appellant for this sum. The cross-assignment of error of appellee Mrs. Walker presenting this point is therefore overruled, as well as the twelfth and thirteenth assignments of error of appellant. We can not agree with appellant that Walker's interest in the crop was a mere equity.

The court taxed the costs three-fifths against appellant, one-fifth against Mrs. Walker and one-fifth against the Port Arthur Company. A motion to retax costs was overruled and upon this appellant assigns error. The point is made that inasmuch as appellant recovered judgment for the $49 they were the successful parties in the suit and should not have been required to pay any of the costs. (Rev. Stats., art. 1425.) It is provided by statute that the court may for good cause, to be stated on the record, adjudge the costs otherwise. (Rev. Stats., art. 1438.) The cause stated in the record by the court for adjudging the costs as was done is, we think, sufficient to show that such judgment was a proper exercise of its discretion. (Williams v. Kinnard, 10 Texas, 508.)

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.