## RHEA MORTGAGE CO. v. LEMMERMAN.
(No. 11749.)

Court of Civil Appeals of Texas. Fort Worth. April 2, 1927.

Rehearing Denied May 7, 1927.

1. **Sales** ⊗⟹235(4)—**Buyer of automobile mortgaged by officer of seller individually without seller's knowledge held not affected with constructive notice of such recorded mortgage** (**Rev. St. 1925, arts. 5490, 5494, 6597-6599, 6626, 6627**).

Buyer of automobile *held* not affected at time of purchase with constructive notice of note and chattel mortgage executed individually by secretary of seller, where seller did not know of execution of such mortgage, since record of mortgage, under Rev. St. 1925, arts. 5490, 5494, 6597-6599, 6626, 6627, was constructive notice only to those claiming under mortgagor.

2. **Chattel mortgages** ⊗⟹188(2)—**Mortgage on automobile, constituting part of motor company's stock, held invalid, as against buyer** (**Rev. St. 1925, art. 4000**).

Chattel mortgage on automobile, which constituted part of stock of motor company, was invalid, as against buyer, in view of Rev. St. 1925, art. 4000, since it is not necessary that entire stock be mortgaged to bring case under statute.

Buck, J., dissenting.

---

Appeal from District Court, Cooke County; W. S. Moore, Judge.

Action by the Rhea Mortgage Company against R. H. Pringle, in which a writ of sequestration was issued for the seizure of a mortgaged automobile in the possession of A. H. Lemmerman. Lemmerman filed a claimant's affidavit and bond, and a trial of right of property was had. Judgment for Lemmerman, and the Mortgage Company appeals. Affirmed.

Austin F. Anderson, of Fort Worth, for appellant.

W. O. Davis, of Gainesville, for appellee.

CONNER, C. J. The record in this case shows that a suit was instituted by the appellant company against one R. H. Pringle in a county court of Tarrant county to recover upon a certain note made payable to the Fain-Bender Motor Company, hereinafter called motor company, and to foreclose a mortgage upon a certain Essex automobile, also executed to secure the payment of said note. Upon the date of the institution of the suit a writ of sequestration was issued, directed to the proper officer of Cooke county, commanding the officer to seize the automobile alleged to be then in the possession of A. H. Lemmerman. The writ of sequestration was executed by the officer taking the automobile into his possession. Lemmerman, in whose possession the automobile was found, filed a claimant's affidavit and bond. The affidavit and bond are in due form and were filed in the district court of Cooke county, in which a trial of right of property was had upon issues presented as provided by law. The trial resulted in a verdict in favor of Lemmerman, and the mortgage company has duly prosecuted this appeal.

The undisputed facts show that R. H. Pringle was the secretary and treasurer of the motor company engaged in the business of selling new and secondhand automobiles in the city of Fort Worth; that the motor company, on April 30, 1924, purchased from William Morris, the general distributing agent of the manufacturing company, the Essex coach in question, and placed the same upon its floors for sale; that on the 7th day of May, 1924, R. H. Pringle executed a promissory note in the sum of $1,104, payable to the motor company, in monthly installments of $92 each, and, to secure the same, executed a mortgage upon the automobile in question. On the same day, Pringle, in the name of the motor company, assigned said note and mortgage to the appellant in this case. The assignment was signed "Fain-Bender Motor Company, by R. H. Pringle, Secretary and Treasurer." The appellant company paid for the note and mortgage in cash the sum of approximately $100 less than their face value and caused the same to be duly deposited for record in the chattel mortgage records of Tarrant county on the 8th day of May, 1924.

There is no recorded bill of sale, as authorized by article 6626, Revised Statutes of 1925, or other evidence tending to show that the motor company in fact sold to Pringle the automobile in question, and upon a search there was not found any record upon their books or minute entries of any kind showing a sale to him, nor was any evidence offered which showed that Pringle in fact ever took the automobile off the floors of the motor company's sales room and used it, nor does the evidence show what Pringle did with the money received from the appellant company in consideration of the transfer of the note and mortgage. It was shown, however, that later the motor company sold the automobile in question to one High, who thereafter returned the automobile in exchange for a new Hudson, after which it was sold by the motor company to the appellee, Lemmerman, who gave therefor his note and mortgage, payable to the motor company in installments and now held and owned by a Fort Worth bank, a number of said installments having been paid by Lemmerman. At the time of Lemmerman's purchase it was sold to him from the floor of the motor company's salesroom, and he had no actual notice of the note and mortgage held by the appellant company. Since the time specified, the motor company became insolvent and is no longer doing business, the whereabouts of Pringle is not shown, and no member of the motor company called to testify.

The questions presented on this appeal are whether, under the circumstances stated, Lemmerman, at the time of his purchase, was affected with constructive notice of the note and mortgage owned by the appellant company, and whether his motorcar is subject to the mortgage.

[1] Appellant's proposition is that:

"Where the owner of personal property takes a mortgage thereon, to himself as mortgagee, from one having no interest therein, securing an accommodation note between the parties, and assigns the note and mortgage, the fact that the mortgagor never had any real interest in the property constitutes no defense to an action brought by the assignee to foreclose and sequester the property under the mortgage, whether the defendant be a stranger to the transaction or a claimant under a party to it."

In support of this proposition, appellant cites the case of Dendy v. First National Bank of Cobleskill, N. Y., 76 Kan. 301, 91 P. 682; Wogan v. Sivey, 95 Kan. 774, 149 P. 411; Iowa National Bank v. Citizens' National Bank, 70 Okl. 1, 172 P. 924.

Without reviewing these cases at length, we think it will be found upon their consideration that they are distinguishable from the case before us, particularly in the fact that the property under consideration was daily exhibited for sale; also it appears in some of these cases that the note and mortgage executed by the person not owning the property

did so with the consent of the owner as an accommodation for him. It also appears in one of the cases that the subsequent purchaser had actual notice of the assignment of the note and mortgage to an innocent purchaser. On the contrary, in the case now under consideration, it does not appear that the motor company consented to or knew of the execution of the note and mortgage by Pringle or knew of or consented to their transfer to the appellant company, nor even that they ever received the cash paid by the appellant company to Pringle in consideration of such transfer. For aught the record shows, Pringle converted the money to his own use and benefit without knowledge on the part of his principal.

Article 5490, Revised Statutes of 1925, provides that every chattel mortgage or other instrument of writing intended to operate as a lien upon personal property, and every transfer thereof which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged or affected by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making the same, as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument or a copy thereof shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated.

The filing and recording of such instruments of writing is provided for in article 5494, which specifies that the clerk shall keep a book in which shall be entered a minute of all such instruments, noting the time of their reception, name of mortgagor, name of mortgagee, date of the instrument, amount secured, when due, property mortgaged, and remarks, etc.

Articles 6597, 6598, and 6599 provide that the county clerk shall keep in alphabetical order a well-bound index to all books of records wherein deeds, powers of attorney, mortgages, or other instruments of writing concerning lands and tenements are recorded. Said books are required to be cross-indexed and contain the names of the several grantors and grantees in alphabetical order, etc.

Articles 6626 and 6627 provide for the registration of bills of sale concerning bonds or chattels and declare mortgages thereon void as to subsequent purchasers for value without notice.

As already stated, the appellee, at the time of his purchase, was without actual notice of the existence of the mortgage made the basis of appellant's claim. The crux of the contention made in behalf of appellant, however, is that the record of the mortgage, as stated, amounted to constructive notice to appellee of appellant's right. If, indeed, the authorities cited in behalf of appellant and hereinbefore referred to are not distinguishable from the case now before us and support the contention urged, we feel that we must disagree with the contention. Appellee testified that he made no examination of the records, and assuming that at the time of his purchase the car was owned by the motor company, and further assuming that appellant's mortgage was duly recorded and duly indexed as provided by the statutes to which we have referred, appellee, upon a search of the record, would not have found, either upon the index or upon the face of the mortgage, that the motor company had executed and delivered to appellant a mortgage or created a lien of any kind upon the automobile. Nothing in the law required him to search the records for the name of a possible mortgagee whose rights or claims should be recognized. To so require would impose upon an intended purchaser a burdensome and, perhaps, extended examination.

As stated in the case of Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452:

"The registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed."

In White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875, it was said:

"The recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some interest or right in the property under the grantor or mortgagor."

See, also, 11 Corpus Juris, 540; Bradford v. Lembke (Tex. Civ. App.) 118 S. W. 159; McReynolds v. First National Bank, 156 Ark. 291, 245 S. W. 819; Windle v. Citizens' National Bank, 204 Mo. App. 606, 216 S. W. 1020; Mackey v. Cole, 79 Wis. 426, 48 N. W. 520, 24 Am. St. Rep. 728; Wunschel v. Farmers' State Bank of Burkburnett (Tex. Civ. App.) 203 S. W. 924; Beaumont Rice Mills v. Bridges, 45 Tex. Civ. App. 439, 101 S. W. 513.

[2] Moreover, the motor company was unquestionably a retail dealer and the automobile in question undoubtedly constituted a part of its stock. Article 4000, Revised Statutes of 1925, declares that:

"Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

It is not necessary that the entire stock be mortgaged to bring the case under the statute, the binding force of which has been many times recognized in the decisions. See General Motors Acceptance Corporation v. Boddecker (Tex. Civ. App.) 274 S. W. 1016; First

National Bank of Stephenville v. Thompson (Tex. Com. App.) 265 S. W. 884; National Bank of Texas v. Lovenberg, 63 Tex. 506; J. I. Case Threshing Machine Co. v. Lipper (Tex. Civ. App.) 181 S. W. 236; Wright v. Texas Moline Plow Co., 40 Tex. Civ. App. 434, 90 S. W. 905.

We conclude that the judgment below must be affirmed.

BUCK, J. (dissenting). I cannot agree with my associates in the conclusion that the recorded mortgage was not constructive notice to subsequent purchasers of the existence of a lien to secure the unpaid part of the purchase price, owing by Pringle to the Fain-Bender Motor Company, and which mortgage and the lien retained therein was transferred by the mortgagee, acting by its duly authorized secretary and manager, to the Rhea Mortgage Company. Both mortgage and the transfer thereof were promptly filed for record in the chattel mortgage records of Tarrant county, and any purchaser of the car in question desiring to learn if the automobile was mortgaged could have, by going to the records, discovered that the proposed seller had theretofore reserved a lien thereon to secure the unpaid purchase price and that said mortgage lien had not been released. The writer cannot see how the Rhea Mortgage Company could have reasonably been expected to take any further precautions than it did to protect itself. There is no evidence that it or any of its officers knew that, when Pringle bought or purported to buy the car from Fain-Bender Motor Company, he intended to leave the car on the sale floors of the company, or that such was the case during all of the time from the sale of the car to Pringle to the sale to Lemmerman; in fact, the evidence shows to the contrary. The car was sold at least twice; to Pringle and to High. It is not definite that the Essex car was new when it was bought by Fair-Bender Motor Company from William Morriss, of Dallas. Hence, at the time the car was sold to appellee, it was a secondhand car. This fact gave appellee notice that some one had owned and used the car prior to the proposed sale to him, and the writer believes that the appellee was charged with the duty to examine the records to see if any unsatisfied mortgage was on the car at the time.

The wife of appellee was the stenographer in the office of Pringle at Fair-Bender Motor Company's place of business, and assisted Mr. Pringle in keeping the books. It is no unwarranted presumption that she wrote the mortgage retained by the motor company in the sale of the car to Pringle, and therefore had actual knowledge thereof.

Article 5494 of the 1925 Civil Code provides:

"The county clerk shall keep a book in which shall be entered a minute of all such instruments, which shall be ruled off into separate columns, with heads as follows: (a) Time of reception, (b) name of mortgagor, (c) name of mortgagee or trustee and cestui que trust, (d) date of instrument, (e) amount secured, (f) when due, (g) property mortgaged, and (h) remarks; and the proper entry shall be made under each of such heads. Under the head of 'Property Mortgaged,' it will be sufficient to enter a general description of the property pledged and the particular place where located, and an index shall be kept in the manner as required for other records. When the instrument is the transfer of a lien the county clerk shall enter on the margin, or under the head 'Remarks' in connection with the original record of registration of such lien, a notation, 'transferred by —— to —— this —— day of ——, 19—,' filling the blanks with the names of the parties and the date of such transfer, and note the date it is filed for registration. * * *"

Each county clerk is required to keep an alphabetical index, and the manner of such keeping such record is provided in articles 6597, 6598, 6599 as follows:

6597: "Each county clerk shall keep in alphabetical order a well-bound index to all books of records wherein deeds, powers of attorney, mortgages or other instruments of writing concerning lands and tenements are recorded, distinguishing the books and pages in which every such deed or writing is recorded."

6598: "It shall be a cross-index and shall contain the names of the several grantors and grantees in alphabetical order. * * *"

6599: "Each shall, in like manner, make and keep in his office a full and perfect alphabetical index to all books of record in his office, wherein all instruments of writing relating to goods and chattels, or movable property of any description, marriage contracts, and all other instruments of writing authorized or required to be recorded in his office, or recorded. * * *"

The writer does not believe, under the circumstances shown in this case, the "Bulk Sales Law" should apply, for it was not in the contemplation of both parties, at least, that the car should be retained in the possession of the seller and daily exposed for sale. Border National Bank v. Coupland (C. C. A.) 240 F. 355, in which Judge Walker, for the Fifth circuit, held that, where it was not contemplated by both parties that the goods mortgaged would be daily exposed to sale, the statute did not apply.

The writer, on account of the pressure of other official duties, has not the time to write at length on the interesting question herein involved, but he believes that appellant was vigilant in protecting himself, and did everything legally required to give notice to possible purchasers of the mortgaged property, and that of two innocent parties the one who was diligent in obeying the registration statutes should prevail.