Syllabus.

## No. 1974.

BRYANT HOLMES ET AL. *v.* BENJ. F. BUCKNER ET AL.

1. JURISDICTION.—Justices' courts, being created by the Constitution, exercise, within their defined limits, general jurisdiction, and their judgments can not be attacked as void for not showing all the facts necessary to jurisdiction.

2. SAME.—It is only when a court of general jurisdiction has conferred on it special and summary powers, wholly derived from the statute and which do not belong to it as a court of general jurisdiction, and when such powers are not exercised according to the course of the common law, that its judgments are to be treated like those of courts of special and limited jurisdiction.

3. CASES APPROVED.—Gilpin v. Page, 18 Wallace, 350; Harvey v. Tyler, 2 Wallace, 342, approved.

4. JURISDICTION—COLLATERAL ATTACK.—The fact that jurisdiction was conferred on the presiding justice of the peace of a county by Act of the legislature co-extensive with the limits of his county and for any amount not less than one hundred, and not more than one thousand dollars, does not render a judgment rendered by such presiding justice subject to col lateral attack for not showing on its face that service had been obtained on the defendant.

5. JUDGMENT—EXECUTION.—After the rendition of a judgment for more than two hundred dollars under such enlarged jurisdiction, the justice of the peace who succeeded the justice who rendered it had authority to issue execution to enforce it, and after the passage of an act restricting the jurisdiction. The authority existed to execute the former valid judgments of his predecessor, no matter in what cause of action rendered.

6. EVIDENCE—SHERIFF'S RETURN.—In a suit for the recovery of land claimed by virtue of a purchase at sheriff's sale and sheriff's deed, where the sheriff's return is not in accordance with the deed, parol evidence is admissible to explain and correct the sheriff's return on the execution.

7. CASES FOLLOWED.—King v. Russell, 40 Texas, 125; Ayers v. Duprey, 27 Texas, 593, and Gardner v. Cutler, 28 Texas, 175, followed.

8. EXECUTION SALE—PURCHASER.—The purchaser's title at execution sale under a valid judgment, the proceedings prior to sale being regular, becomes perfect on the execution and delivery of the deed, and can not be affected by any irregularities in the return made of the execution by the sheriff. The recitals in the deed, if in conflict with any fact stated in the sheriff's return, will control.

9. BONA FIDE PURCHASER.—A purchaser at execution sale is deemed an innocent bona fide purchaser, in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person An innocent purchaser from one who purchased with notice is as fully

protected as if he had bought without notice from the vendor of the party from whom he purchased.

10. REGISTRATION—NOTICE.—The registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed.

APPEAL from Wise.    Tried below before the Hon. C. C. Potter.

*Holman, Bro. & Son* and *D. T. Leary*, for appellants, on their proposition that the court erred in admitting in evidence copy of the judgment introduced by defendants over objection of plaintiffs, cited Freeman on Judgments, sections 121, 123, notes; Dallam, 553; 4 Texas, 356; 25 Texas, Supplement, 132; 25 Mississippi, 531; Revised Statutes, Article 1578; Paschal's Digest, 6338; Freeman on Judgments, section 125.

*Dickson & Patterson* and *John L. Lovejoy*, for appellees.

WILLIE, CHIEF JUSTICE.    This is an action of trespass to try title, brought by the appellant against Buckner and other defendants to recover one-fourth of a league of land lying in Wise county, and originally granted to William Watson.    The plea of the ·defendant was not guilty, judgment was rendered in the court below in their favor, and from that judgment this appeal is taken.

The appellants claim the land as heirs, or vendees of the heirs, of one E. T. Watson, and each of the appellees claims a distinct portion of the land as a purchase from W. B. Roberts, who bought it at execution sale made under a judgment obtained by Roberts against E. T. Watson and W. A. Davis in a justice's court of Fannin county.

The appellants say that this judgment was obtained by default in a court of special jurisdiction, and does not show upon its face that service had been had upon the defendants in the judgment, and was, therefore, void.    It was obtained before the presiding justice of the peace of Fannin county, who, by Act of May 26, 1873, had jurisdiction conferred upon him coextensive with the limits of his county, when the amount in controversy was not less than one hundred dollars and not more than one thousand dollars.    (2 Pas. Dig., sec. 6405b.)

In Orr v. Rhine, 45 Texas, 354, this Act was held to be constitutional, and it was said that its only effect was to enlarge the jurisdiction of the presiding justice.    In Williams v. Ball, 52

Texas, 503, it was held that justice's courts being created by the Constitution, exercised within their defined limits general jurisdiction, and that their judgments could not be attacked as void for not showing all the facts necessary to give a court jurisdiction. The Supreme Court of the United States, and other courts following the same line of decisions, have held that it is only when a court of general jurisdiction has conferred upon it special and summary powers, wholly derived from statutes, and which do not belong to it as a court of general jurisdiction, and when such powers are not exercised according to the course of the common law, that its judgments are to be treated like those of courts of special and limited jurisdiction. (Galpin v. Page, 18 Wall., 350; Harvey v. Tyler, 2 Wall., 342; Pulaski County v. Stuart et al., 28 Gratt., 879.) Here there was no power to proceed in a special and summary manner, but the whole course of procedure, in matters coming within the enlarged jurisdiction, was such as is recognized at common law and by our Constitution and statutes, and generally in use in the courts of the State taking cognizance of similar matters.

We think, therefore, that the judgment could not be collaterally attacked for not showing on its face that service had been obtained upon the defendants. The other objections, going as they do to the cause of action upon which the judgment was rendered, and the want of evidence to support it, are, of course, untenable in a collateral proceeding.

An execution was issued upon this judgment on the third of May, 1881, by the justice of the peace who succeeded in office the justice by whom the judgment was rendered. It is objected that the justice issuing the execution had no authority to do so, the judgment being for an amount beyond his jurisdiction, and the special jurisdiction of the court having been abolished without provision of law for the issuance of execution upon judgments rendered by virtue of such special jurisdiction. The justice of the peace by whom this execution was issued succeeded under the general law of the State to the books and papers of his predecessor, and was required to dispose of his unfinished business. There was no law in existence at the time prohibiting him from issuing an execution for more than two hundred dollars. In issuing the execution he was not taking cognizance of a cause involving an amount beyond his jurisdiction. His predecessor had authority to render the judgment, and this justice was required to enforce such judgment by execution, without reference to

what would have been his own powers had the cases come before him instead of his predecessor.

In committing to him the unfinished business of his predecessor, the law in effect authorized him to execute the former's valid judgments, no matter upon what cause of action rendered, in as full a manner as if a special statute giving him that power had been enacted. We think the execution was lawfully issued.

It was made returnable within sixty days, and the sheriff's return, made August 10, 1881, shows that it was received by the sheriff on the eighteenth day of May, 1881, and that the land in controversy was sold under it on the first Tuesday in July, 1881, which was the fifth day of that month, and more than sixty days after the execution was issued. The sheriff's deed to Roberts showed that the levy was made upon the eighth of May, upon Watson's interest as it existed on the eighteenth of that month, and that the sale occurred on the first Tuesday in June, 1881, which was the seventh day of that month. The sheriff testified that the eighth of June was a clerical mistake, for the eighteenth, and that July in the return was a clerical mistake, for June. It is contended by the appellant, that, as between them and the appellees, the deed and return must be taken as they appear, and not as they should have been written. They show a void sale, which conveyed no title to the purchaser. They further contend that the deed as explained by the sheriff, shows a sale after only nineteen days notice, and the sale is void for that reason.

To these objections it may be answered that the title of the purchaser from the sheriff who has received a deed from that officer showing by its recitals a legal sale, is not dependent on the sheriff's making a proper return of the execution. "He has no control over the officer, and therefore is not prejudiced by a deficient or incorrect return, nor by the entire absence of any return whatever." (Freeman on Executions, section 341; Ayers v. Dabney, 27 Texas; King v. Russell, 40 Texas, 125; Garner v. Cutler, 28 Texas, 175.) But, in a conflict between the sheriff's deed and his return, the recitals of the deed always control. (Rogers v. Cawood, 1 Swan, 142; Smith v. Kelley, 3 Murph., 507.)

The purchaser's title, under a valid judgment, execution and sale, becomes perfect upon the execution of the deed. The return of the sheriff is made afterward, and if it be incorrect and in contradiction of the deed, it can not affect the purchaser's title already perfected. The recitals of the deed showing that the

sale was made during the life of the execution, the sale was not void for want of the twenty days notice required by law. This was a mere defective execution of a valid power, an irregularity which might have set aside the sale if presented at a proper time, in a proper manner and by the proper person, but did not subject it to collateral attack. This principle is now so firmly settled by numerous decisions of this court as to be no longer a subject of discussion. (Howard v. North, 5 Texas, 290; Sydnor v. Roberts, 13 Texas, 598; Coffee v. Silvan, 15 Texas, 354; Ayers v. Duprey, 27 Texas, 593; Boggess v. Howard, 40 Texas, 154; Andrews v. Richardson, 21 Texas, 287; Hancock v. Metz, 15 Texas, 205.)

All other objections made to the recitals of the deed relate also to irregularities, which, for the reasons above given, did not render it liable to be collaterally attacked. The title of Roberts not appearing to be void, but merely irregular upon the face of the proceedings under which he claimed, they could not, of course, convey notice that it was void to subsequent purchasers from the heirs of the defendant in execution.

It was shown on the trial that on October 4, 1858, E. T. Watson, the defendant in the execution, had conveyed the land sold under it to his wife, Eveline L. Watson, but the deed was not recorded in Wise county until September 23, 1883, after the land had been bought at sheriff's sale by Roberts, and had been conveyed by him to the appellees. It was shown that Roberts had actual notice of this deed before he bought, but the appellees had not such notice before their purchase. Mrs. Eveline Watson died in 1859, and subsequently, on November 2, 1878, Mrs. Margaret Graham, one of her children, joined by her husband, conveyed her interest in the land to Holmes, one of the plaintiffs. She recited in the deed that the land was inherited from Eveline L. Watson, wife of E. T. Watson, who inherited the same from his father William Watson, the original grantee. This deed was recorded November 6, 1878.

The appellant claims that all the actual interest held by E. L. Watson in the land at the date of the levy was the one-third interest for life which he had inherited from his wife. This is doubtless true as between E. L. Watson and the other heirs of his wife and those claiming under them, as also between these latter parties and any one claiming under Watson with notice of the true state of his title. But as to an innocent purchaser for value, one having no notice of the deed from Watson and his wife, the title

to the whole land was in Watson, because there was nothing of record to show that he had parted with it. If this is not the effect of our registration laws, they are useless to protect innocent purchasers, for whose benefit they were enacted. It is now fully settled by our decisions and confirmed by statute that a purchaser at execution sale is deemed an innocent, bona fide purchaser in all cases where he would be deemed to be such had the sale been made voluntarily by the defendant in person. (Rev. Stats., art. 2318.)

Roberts himself was not an innocent purchaser, because he had actual knowledge of the deed from Watson to his wife. But his vendees were, as they had no such knowledge, and it is a familiar principle of equity that an innocent purchaser from one who purchased with notice is as fully protected as if he had bought without notice from the vendee of the party from whom he purchased.

But it is said that the deed from Mrs. Graham and her husband being on record at the time these appellees bought from Roberts, and reciting that Mrs. Graham inherited the land from Mrs. Watson, was sufficient to put the appellees upon notice that the title had passed out of Watson long before the sheriff's sale This deed was but a single link in the chain of title leading from E. T. Watson to Holmes. It showed on its face no connection with any other conveyance leading up to the common vendor of Holmes, and the parties claiming under the sheriff's sale. It did not show that E. T. Watson had parted with his title to any one under whom the grantee in the deed claimed. So far as the deed was concerned, it proved no more than that the grantee in it had taken a conveyance from an heir of a person who was described as the wife of the party under whom the appellees claimed, without showing that she had any title to the land. Any one reading the recital in the deed would naturally conclude that title in Mrs. Watson was claimed by reason of her being the wife of the son of the original grantee, and not that her husband had conveyed the property to her. The very fact that the deed apparently undertook to recite the title of the grantors therein, and said nothing of any link connecting Mrs. Watson's title with that of her husband, other than the relationship that existed between them, would lead to the conclusion that this was the only ground upon which her title rested. The registry acts are enacted for the protection of purchasers and encumbrances against previous conveyances that are not recorded.

"The registry of a deed is notice only to those who claim through or under the grantee by whom the deed was executed." (Losey v. Simpson, 11 N. J. Eq., 246; Bates v. Norcross, 14 Pick., 234; Keller v. Nutz, 5 Serg. & R., 246.) These appellees did not claim through Mrs. Graham or Mrs. Watson. No search they could have made of the records at the time they bought would have shown that the title had passed from the person under whom they did claim. That a deed had been made to a portion of the land by a person having no connection with the one under whom they claimed, and whose title as recited in the deed and so far as the record showed was worthless, did not impose upon them the duty of inquiring in other directions to see if by some possibility such vendor might not be connected with the party from whom they claimed title, we think the appellees were innocent purchasers, notwithstanding the previous registration of the deed from Mr. and Mrs. Graham to the appellant Holmes. As to the abstract of title, the statute says that it shall conclude the party offering it so far as his documentary evidence is concerned, and does not prohibit him from introducing such lawful parol proof as he may show in explanation of the papers mentioned in the abstract. (Rev. Stat., 4799.) There is no error in the judgment, and it is affirmed. ·

*Affirmed.*

Opinion delivered December 7, 1886.