Affirmed in Part, Reversed and Remanded In
Part, and Opinion filed December 22, 2009

In
The

Fourteenth
Court of Appeals



NO. 14-08-00634-CV



Hue Nguyen
& Southwestern National Bank,
Appellants 

v.

Alonso Chapa, Appellee 



On Appeal from
the 269th District Court

Harris County, Texas

Trial Court
Cause No. 2007-02088



 

O P I N I O N

This dispute involves competing claims to 3.101 acres
of land along Highway 249 in Harris County.  In 2005, Victor Ruiz, owner of the
3.101 acres by virtue of a special warranty deed, sold the property to
appellee, Alonso Chapa.  Chapa did not file the contract for sale or a deed
with the county reflecting his interest in the property.  Thirteen months
later, Ruiz sold the same 3.101 acres to appellant, Hue Nguyen.  Nguyen
immediately filed a general warranty deed with the county reflecting his
interest in the property.  After learning of the Ruiz-Nguyen sale, Chapa sought
to establish his title by filing the underlying suit.  Challenging Chapa’s
unrecorded interest, Nguyen claimed he was a bona fide purchaser.  Appellant,
Southwestern National Bank (“Southwestern”), the bank who financed Nguyen’s
loan on the 3.101 acres, intervened and asserted status as a bona fide
mortgagee.  A jury found in favor of Chapa on his contract claims against Ruiz
and found against Nguyen’s and Southwestern’s claims of bona fide purchaser and
mortgagee, respectively.  Adopting the jury’s verdict, the trial court rendered
judgment in favor of Chapa, declaring Chapa had superior title to the 3.101
acres.  Nguyen and Southwestern now appeal, challenging the denial of their
motions for new trial and judgment notwithstanding the verdict.  In four
related issues, Nguyen and Southwestern argue that because they did not have
notice of Chapa’s unrecorded interest, Nguyen is a bona fide purchaser,
Southwestern is a bona fide mortgagee, and Chapa’s unrecorded interest is
void.  Finding as a matter of law that Nguyen is a bona fide purchaser and
Southwestern is a bona fide mortgagee, we affirm in part and reverse and remand
in part.  

I.  BACKGROUND

The property in dispute consists of
five lots that are a part of a larger tract of land known as Block four.  The
following illustration depicts the general nature of the lots from which the
instant dispute arises.[1] 


                                                                            
                             Lot 15




 
 
 
 
 
 
 


  



                                          Lots 6 and
7                                          Lot 14

                                                                                                          


                                                                                                          Lot
13

                                                                                                         


                                                                                                           Lot
12                                                                                                                             


                                                                                                                                                                                                                

                                                                                                                                          

 

                                                                                                                                          Lots
8 - 11

                                                                                                                                                                                                                

 

 

The record reflects that Doris Mae Ross originally
owned Lots 6 through 15, and in 1990, she began selling the lots to various
buyers.

A.  Ross-Chapa Deed

In 1990, Ross conveyed Lots 6, 7, 14, and 15 to Chapa
by general warranty deed (“Ross-Chapa deed”).  The land conveyed in the
Ross-Chapa deed was described as follows:  

Tract 1:  [R]eal estate situated in Harris County, Texas
and more particularly described as being 1.1774 acre tract, the residue of lots
Six (6) and Seven (7) Block Four (4) . . . .

.                        
.                     .

Tract 2:  Real estate situated in Harris County, Texas and
more particularly described as being Lots fourteen (14) and fifteen (15), Block
Four (4) . . . .  Containing 2.1819 acres of land more or less[2] . .
. .

The Ross-Chapa deed required Chapa to construct and
maintain a line fence separating his lots—Lots 6, 7, 14, and 15—from Lots 8
through 13.  Specifically, the deed provided that Chapa “construct, repair[,]
and maintain a line fence on the West of abutting Lots 8, 10, 11, 12, & 13,
and on the South Side of Lot 14 to a height of 6 feet.”  The Ross-Chapa deed
was filed with the county property records.  

Thereafter, Chapa improved Lots 6 and 7 to operate an
automobile collision repair business.  Lots 14 and 15 were improved with
concrete and used to park business-related vehicles.  Ruiz, who was also in the
salvage and collision repair business, executed a five-year lease with Chapa on
Lots 6, 7, 14, and 15.  During the leasehold, Ruiz operated a collision repair
business.  After the five-year lease expired, Ruiz considered purchasing real
estate and decided to rent the four lots on a month-to-month basis.  

 

 

B.  Ross-Ruiz Deed

On September 16, 2003, Ross executed a special
warranty deed with a vendor’s lien purporting to convey Lots 6 through 12 to
Ruiz (“Ross-Ruiz deed”).  The property conveyed in the Ross-Ruiz deed was described
as “[a] tract of land containing 4.315 acres, more or less, out of Lots Six
(6), Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11) and Twelve (12),
Block Four (4).”  Although the Ross-Ruiz deed purported to convey Lots 6 and 7,
Ross no longer owned these lots:  Lots 6 and 7, amounting to 1.1774 acres, were
then owned by Chapa by way of the Ross-Chapa deed.  Ruiz executed a promissory
note in favor of Ross (“Ross-Ruiz promissory note”) and filed the deed with the
county.

C.  Ruiz-Chapa Contracts

The following year, Ruiz encountered financial
trouble and was unable to pay his monthly rent on Lots 6, 7, 14, and 15.  Ruiz
closed the salvage and collision business, and Chapa took back possession of
the lots.  Ruiz approached Chapa for financial help, and Chapa gave Ruiz
periodic personal loans over the next months.  Finally realizing he could no
longer pay on Ross’s promissory note, Ruiz offered to sell the property subject
of the Ross-Ruiz deed to Chapa.  

On May 27, 2005, Ruiz and Chapa executed a handwritten
contract conveying Lots 6 through 12 to Chapa (“Ruiz-Chapa handwritten
contract”).  The property in the Ruiz-Chapa handwritten contract was described
as “property situated in Harris County at Hwy. 249[,] a tract of land
containing 4.315 acres, more or less, out of lots six (6), seven (7), eight
(8), nine (9), ten (10), eleven (11), and twelve (12) Block (4).”  Although
Chapa agreed to purchase Lots 6 and 7 from Ruiz, Chapa apparently did not
realize that he in fact owned Lots 6 and 7 by virtue of the Ross-Chapa deed.

As consideration, Chapa agreed to: (1) pay Ross
$6,400.00 in past due rent owed by Ruiz on Lots 6 through 12, (2) convey the
collision repair business Chapa was operating on Lots 6, 7, 14, and 15 to Ruiz,
including tools, equipment, and the company’s goodwill, (3) lease Lots 6, 7,
14, and 15 to Ruiz for $6,000.00 a month, and (4) pay Ruiz $10,500.00 in
“complimentary rents.”  Chapa further agreed to pay the remaining balance on
the Ross-Ruiz promissory note.   

Later the same day, Ruiz and Chapa executed a typed
contract conveying the same property to Chapa (“Ruiz-Chapa typed contract”). 
The consideration generally remained unchanged; however, the legal description
of the property was modified.  The Ruiz-Chapa typed contract described the
property as “[a] tract of land containing 3.101 acres, more or less, out of
Lots 6, 7, 8, 9, 10, 11, 12, Block 4 . .  . in Harris County.”  However, the
field notes attached to the Ruiz-Chapa typed contract identified only Lots 8
through 12, omitting Lots 6 and 7.  Thus, the two Ruiz-Chapa contracts varied
in two respects:  (1) the handwritten contract purported to convey 4.315 acres
of land, while the typed contract purported to convey only 3.101 acres; and (2)
the handwritten contract purported to convey Lots 6 through 12, while the typed
contract purported to convey Lots 6 through 12 in the general description but
only Lots 8 through 12 in the descriptive field notes.   

Neither Chapa nor Ruiz attempted to rectify the inconsistencies. 
The record is silent as to whether a deed was executed between Chapa and Ruiz
on their contracts.  Still, a deed reflecting Chapa’s interest was not filed
with the county, and neither contract was filed to disclose Chapa’s interest. 
Furthermore, Ross was not advised of the Chapa-Ruiz contracts.  Chapa testified
that Ross sold the lots to Ruiz “interest free,” and wanted to retain the
interest free term.  Accordingly, Chapa decided to pay Ross through Ruiz,
giving Ruiz the payments to forward to Ross as if Ruiz was still paying on the
promissory note.  Chapa gave Ruiz the monthly notes, and Ruiz forwarded the
payments to Ross over the next year.[3]   


D.  Ruiz-Nguyen Deed

On July 17, 2006, Ruiz and his wife executed a
general warranty deed with vendor’s lien conveying Lots 6 through 12 to Nguyen
(“Ruiz-Nguyen deed”).  Specifically, the Ruiz-Nguyen deed described the
property as “[a] tract of land containing 3.101 acres, more or less, out of
Lots 6, 7, 8, 9, 10, 11 and 12, Block 4 . . . in Harris County.”  Although the Ruiz-Nguyen
deed identified Lots 6 through 12, the total acreage of Lots 6 through 12
exceeded 3.101 acres.  The attached metes and bounds description, based upon
the survey, described only Lots 8 through 12, amounting to 3.101 acres.  A loan
officer spotted the discrepancy between the metes and bound acreage description
and the lot numbers. The loan officer advised that the Ruiz-Nguyen should
identify only Lots 8 through 12, excluding lots 6 and 7, because the metes and
bounds description was correct.  Thus, 3.101 acres was the correct acreage. 
Because the acreage was correct in the deed and because the discrepancy in the
lot numbers was not material to the value of the area sold and financed, Lots 6
and 7 remained in the deed description.  

Southwestern financed Nguyen’s loan on the property
and retained a lien with a deed of trust on the property.  At closing,
Southwestern paid $192,000.00 cash to Ross for the balance due on the Ross-Ruiz
promissory note.  Once Nguyen began to develop the property, he and Chapa discovered
that Ruiz had sold both of them the same property.  

E.  Trial Court Proceedings

Chapa filed suit against Ruiz for breach of contract,
alleging that he failed to convey the property to Chapa after consideration was
paid and by conveying the same property to Nguyen.[4]  Chapa also
filed a quantum meruit claim against Ruiz, claiming that Ruiz owed him
$27,000.00 in rents under the commercial lease that was simultaneously executed
with the Ruiz-Chapa contracts.  As to Nguyen, Chapa filed a tortious interference
with an existing contract claim, alleging that Nguyen knew or had reason to
know about the Ruiz-Chapa contracts and Chapa’s competing interest in the same
property.  After filing his lawsuit, Chapa filed the Ruiz-Chapa contract with
the county.

Nguyen counterclaimed, alleging that he was a bona
fide purchaser.  Nguyen claimed that the Ruiz-Chapa typed contract was a cloud
on his title and requested that the Chapa-Ruiz contract be declared void and
null and, among other things, declare Nguyen’s title clear of any cloud and
quieted against all claims by Chapa under Texas’s recording statute. 
Southwestern intervened, alleging it was a bona fide mortgagee and held the
deed of trust free and clear of Chapa’s unrecorded interest.  Nguyen and
Southwestern further sought subrogation as to Ross’s rights and lien priorities
in the amount of $192,000.00.[5]   


After a jury trial, verdict was returned in favor of
Chapa on his contract claims against Ruiz.  The jury found that Nguyen did not
intentionally interfere with the Ruiz-Chapa contract.  However, the jury found
against Nguyen on his claim of bona fide purchaser.  The jury also found that
Southwestern was not a bona fide mortgagee.  After a variety of pre- and
post-judgment motions, including appellants’ motions for JNOV and new trial,
the trial court signed a judgment in favor of Chapa, declaring him the owner of
the following property with fee simple title, free and clear of any lien and
claims of any party in the underlying cause: a “tract of land containing 3.101
acres, more or less, out of Lots 8, 9, 10, 11, and 12, Block 4  . . . in Harris
County.”  Appellants’ motions for JNOV and new trial were denied.

On appeal, Nguyen and Southwestern challenge the
trial court’s denial of their motions for JNOV and new trial.  Appellants
contend in their first and second issues that the trial court erroneously
denied their motion for JNOV because, as a matter of law, Nguyen is a bona fide
purchaser and Southwestern is a bona fide mortgagee.  In their third and fourth
issues, appellants argue that they were entitled to a new trial because the
evidence is factually insufficient to support the jury’s findings on the issues
of bona fide purchaser and mortgagee.  

 

II.  STANDARDS OF REVIEW

When made on an evidentiary basis, a denial of a
motion for JNOV is reviewed under a legal-sufficiency standard.  City of
Keller v. Wilson, 168 S.W.3d 802, 823, 827; Manon v. Solis, 142
S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); see also
Tex. R. Civ. P. 301.  Accordingly, to determine whether there is some evidence
to support a jury’s finding and, thus, to determine whether a trial court
correctly denied a motion for JNOV, we must view the evidence in the light most
favorable to the challenged finding and indulge every reasonable inference that
would support it.  City of Keller, 168 S.W.3d at 822.  We credit
favorable evidence if reasonable jurors could and disregard contrary evidence
unless reasonable jurors could not.  Id. at 827.  If more than a
scintilla of evidence supports the jury’s finding, the jury’s verdict must be
upheld.  Formosa Plastics Corp., USA v. Presidio Eng’rs & Contractors,
Inc., 960 S.W.2d 41, 48 (Tex. 1998); Miller S.W.3d at 709.  More than a
scintilla exists if the evidence “rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions.”  Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  Conversely, evidence
that is “so weak as to do no more than create a mere surmise” or suspicion is
no more than a scintilla and, thus, no evidence.  Id. (quoting Kindred
v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983)).  

We review the denial of a motion for new trial under
an abuse-of-discretion standard.  Strackbein v. Prewitt, 671 S.W.2d 37,
38 (Tex. 1984); Ashworth v. Brzoska, 271 S.W.3d 324, 328 (Tex.
App.—Houston [14th Dist.] 2008, no pet).  An abuse of discretion occurs if the
trial court acts without reference to any guiding rules or principles.  Goode
v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).

III.  ANALYSIS

In their first two issues, appellants contend that
they conclusively established Nguyen is a bona fide purchaser and Southwestern
is a bona fide mortgagee.  Under Texas law, an unrecorded conveyance of an
interest in real property is void as to a subsequent purchaser who purchases
the property for valuable consideration and without notice.  Tex. Prop. Code §
13.001(a).  However, the unrecorded instrument is binding on a subsequent
purchaser who does not pay a valuable consideration or who has notice of the
instrument.  Id. § 13.001(b).  Thus, to receive the bona fide purchaser
protection, a party must acquire the property in good faith, for value, and
without notice of any third-party claim or interest.  Madison v. Gordon,
39 S.W.3d 604, 606 (Tex. 2001) (per curiam); Pierson v. McClintock, 34
Tex. Civ. App. 360, 78 S.W. 706, 707–08 (Houston 1904, no writ) (finding bona
fide purchaser protection where holder under an innocent purchase for value had
no notice of plaintiff’s claim to the same property).  A bona fide mortgagee
takes a lien in good faith, for valuable consideration, and without notice of
outstanding claims.  Continental Radio Co. v. Continental Bank & Trust
Co., 369 S.W.2d 359, 362 (Tex. Civ. App.—Houston 1963, writ ref’d n.r.e.).

Notice of a third-party’s claim or interest can be
either actual or constructive, which has been broadly defined as information
concerning a fact actually communicated to a person, derived by him from a
proper source, or presumed by law to have been acquired.  Madison, 39
S.W.3d at 606; Flack v. First Nat’l Bank, 148 Tex. 495, 226 S.W.2d 628,
631 (1950).  Generally, the question of whether a party has notice is a
question of fact; it becomes a question of law only when there is no room for
ordinary minds to differ as to the proper conclusion to be drawn from the
evidence.  O’Ferral v. Coolidge, 149 Tex. 61, 228 S.W.2d 46, 148 (1950).


A.  Actual Notice

A subsequent purchaser has actual notice if he has
personal information or express knowledge of an adverse right.  See Madison,
39 S.W.2d at 606.  The only evidence of actual knowledge at trial was Chapa’s
testimony that once he and Nguyen realized Ruiz had sold each of them the same
property, Nguyen asked Chapa if he had filed his interest with Harris County. 
Chapa answered no, and Nguyen replied “bad luck for you.”  Chapa contends that
Nguyen’s inquiry and response shows that he knew of Chapa’s interest and knew
Chapa did not file the interest with the county.  Contrary to Chapa’s argument,
Nguyen’s query is not evidence that he had personal or express knowledge that
Chapa had a competing interest in the same property.  Rather, Nguyen’s
statements merely reflect his knowledge of a party’s duty to record interest in
real estate.  Nguyen’s question and reply are not evidence of actual knowledge;
at best, this evidence provides nothing more than basis for surmise, guess, or
conjecture as to Nguyen’s knowledge of Chapa’s interest.  Accordingly, we find
no more than a scintilla of evidence that Nguyen and Southwestern had actual
knowledge of Chapa’s unrecorded competing interest by personal or express
knowledge.  

B.  Constructive Notice

Constructive notice is notice the law imputes to a
person not having personal information or knowledge.  Flack, 226 S.W.2d
at 632.  One form of constructive knowledge imputes notice where a subsequent
purchaser has a duty to ascertain the rights of a party in possession.  Id. 
The duty to ascertain arises only if the possession is visible, open,
exclusive, and unequivocal.  Id.  This case, however, is not a
constructive-knowledge-by-possession case.  The record reflects, and the
parties do not dispute, that there were no visible signs of possession on the
property:  it was vacant, undeveloped, and bordered by a line fence separating
the 3.101 acres from Lots 6, 7, 14, and 15.  Accordingly, we find as a matter
of law that Nguyen and Southwestern did not have constructive knowledge by
possession.

Nevertheless, a subsequent purchaser is also charged
with notice of the terms in deeds which form an essential link in his chain of
ownership.  See Colvin v. Alta Mesa Resources, Inc., 920 S.W.2d 688, 691
(Tex. App.—Houston [1st Dist.] 1996, writ denied); Portman v. Earnhart,
343 S.W.2d 294, 297 (Tex. App.—Dallas 1960, writ ref’d n.r.e.).  A purchaser is
bound by every recital, reference, and reservation contained in or fairly
disclosed by an instrument that forms an essential link in the chain of title
under which he claims.  Westland Oil Dev. Corp. v. Gulf Oil Corp., 637
S.W.2d 903, 908 (Tex. 1982).  The Ross-Chapa deed, conveying Lots 6, 7, 14, and
15 to Chapa, fell within Nguyen’s chain of title.  As a result, Nguyen and
Southwestern are charged with constructive knowledge of Chapa’s competing
interest as to Lots 6 and 7.  See id.  However, Nguyen and Southwestern
neither dispute their constructive knowledge as to the competing interest on
Lots 6 and 7, nor do they claim bona fide purchaser protection as to these
lots.  Instead, Nguyen and Southwestern contend that they did not have notice
of Chapa’s claim to the 3.101 acres in which Lots 8 through 12 were situated. 
It is a well-established rule that a deed or instrument lying outside of his
chain of title imports no notice.  See Bryant v. Buckner, 67 Tex. 107, 2
S.W. 452, 454–56 (1886); Nelson v. Bridge, 39 Tex. Civ. App. 283, 87
S.W. 885, 887 (Galveston 1905, writ denied).   Here, the trial evidence
conclusively established that no claim to the 3.101 acres described in
Ruiz-Nguyen was filed with the county.  Accordingly, Nguyen and Southwestern
had no constructive notice of Chapa’s competing interest as to the 3.101
encompassing Lots 8 through 12 because of its lying outside of Nguyen’s chain
of title.  

C.  Notice By Inquiry

Although a deed outside the chain of title does not
impute constructive knowledge, a person may be charged with the duty to make a
reasonable diligent inquiry using the facts at hand in the recorded deed.  Portman,
343 S.W.2d at 299; Flack, 226 S.W.2d at 631 (concluding that although
actual notice as been generally defined as to be information directly
communicated to the person to be affected, the term also embraces knowledge of
all those facts which reasonable inquiry would have disclosed, the duty of
inquiry extending only to matters that are fairly suggested by the facts really
known).  Thus, every purchaser of land is charged with knowledge of all facts
appearing in the chain of title through which he claims that would place a
reasonably prudent person on inquiry as to the rights of other parties in the
property conveyed.  Williams v. Jennings, 755 S.W.2d 874, 882 (Tex.
App.—Houston [14th Dist.] 1988, writ denied).  Accordingly, if Nguyen or
Southwestern had knowledge of any fact or circumstance sufficient to put a
prudent man upon inquiry which, if prosecuted with ordinary diligence, would
lead to actual notice of Chapa’s claim to the 3.101 acres, Nguyen and
Southwestern are charged with such knowledge.  See id.  

In determining whether Nguyen and Southwestern were
charged with a duty to make a reasonable inquiry as to the 3.101 acres, we
review which facts were known to them at the time he purchased the property.  See
Portman, 343 S.W.2d at 300 (stating that a reasonable inquiry begins with
facts at hand known to the subsequent purchaser, namely, facts contained in the
recorded deed).  The actual and constructive knowledge possessed by Nguyen and
Southwestern at the time Nguyen purchased the 3.101 acres was:  (1) Chapa owned
Lots 6, 7, 14, and 15 by virtue of the Ross-Chapa deed; (2) the acreage sold in
the Ross-Chapa deed did not include the 3.101 acres Nguyen purchased from Ruiz;
(3) Nguyen’s deed erroneously identified Lots 6 and 7, but excluded the 1.774 
acres in which Lots 6 and 7 were situated; and (4) no deed or interest was
filed reflecting an interest in Lots 8 through 12 or the 3.101 acres in which
Lots 8 through 12 were positioned.  Although the misnumbering of Lots 6 and 7
may have triggered a duty to inquire into competing interests on these two
lots, an ordinary diligent and prudent inspection of the real property records
would not have revealed Chapa’s claim to the 3.101 acres in Lots 8 through 12
necessary to establish actual or constructive knowledge.   Still, Chapa
contends that the misnumbering of Lots 6 and 7 charged Nguyen to go beyond
inspection of the real property records and approach Chapa to determine whether
he had an interest in Lots 8 through 12.  Contrary to Chapa’s argument, the law
imposes no such duty under these facts.  See id. at 300 (reasoning that
reasonable diligence in making inquiry regarding a deed entirely outside the
chain of title does not necessarily include interrogation of every grantor).   

There is nothing in the chain of title showing or
tending to show that Chapa had any claim to the 3.101 acres conveyed to
Nguyen.  The Ross-Chapa deed did not relate or refer to claims to Lots 8
through 12 or the 3.101 acres subject of the Ruiz-Nguyen deed.  The acreage in
the Ross-Chapa deed conveyed two tracts of land:  Tract 1 containing 1.774
acres (Lots 6 and 7) and Tract 2 containing 2.1819 acres (Lots 14 and 15). The
Ross-Chapa deed contains no description of the 3.101 acres conveyed to.  There
was no recorded claim as to the 3.101 acres and no proof of payment of taxes by
anyone but Ruiz.  Because there was nothing to direct Nguyen’s or
Southwestern’s attention to the fact that Chapa had purchased Lots 8 through 12
or the 3.101 acres encompassing these five lots, notice of the defect in the
chain of title—the misnumbering of the lot numbers—defeats neither Nguyen’s
status as a bona fide purchaser nor Southwestern’s status as a bona fide
mortgagee.  

The facts before Nguyen and Southwestern did not trigger
a duty to inquire beyond the county records as to competing interests to Lots 8
through 12 containing the 3.101 acres.  Furthermore, because the real property
records did not reveal a competing interest or information giving rise to
search beyond the real property records, Nguyen and Southwestern did not have
notice by inquiry.  We conclude that there is no more than a scintilla of
evidence to put Nguyen or Southwestern on notice of Chapa’s unrecorded
competing interest as to Lots 8 through 12.  The evidence is legally
insufficient to support the jury’s findings that Nguyen was not a bona fide
purchaser and Southwestern was not a bona fide mortgagee because there is no
evidence that they had actual or constructive notice.  Therefore, we find, as a
matter of law, that Nguyen is a bona fide purchaser and Southwestern is a bona
fide mortgagee.   We sustain appellants’ first two issues and reverse the trial
court’s judgment.  Having sustained these issues, we need not address issues
three and four.

IV.  CONCLUSION

Having resolved issues one and two in favor of
appellants, we reverse the portion of the trial court’s judgment
awarding title, in fee simple, and possession of the property subject of this
case to Chapa free and clear of any lien or claim by appellants and remand
to the trial court for the entry of a judgment reflecting that:  (1) Chapa take
nothing against Nguyen and Southwestern, (2) Nguyen take title and possession
of the property subject of this case free and clear of any claim or lien by
Chapa and remove any cloud on Nguyen’s title, and (3) Southwestern’s deed of
trust lien on the property at issue in this case has priority over any rights
Chapa has in the property.   

We reverse the portion of the trial court’s
judgment awarding Nguyen and Southwestern subrogation liens and remand
for all further proceedings necessary to remove Nguyen’s and Southwestern’s
subrogation liens against the property, reinstate Southwestern’s purchase money
lien, and determine any outstanding interest, if any, Chapa has in the property
consistent with this opinion.

We affirm the remaining portions of the trial court’s
judgment.

 

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

 

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Sullivan.

 









[1]
This illustration is not drawn to scale.  Lots 6 and 7 contain approximately
1.774 acres. Lots 8 through 12 contain approximately 3.101 acres.  Lots 14 and
15 contain approximately 2.1819 acres.

 





[2]
The italicized language was written into the deed by hand.





[3]
The parties agree that the Ruiz-Chapa typed contract is the controlling
contract between Ruiz and Chapa.  Accordingly, we refer to the typed contract
hereinafter as the “Ruiz-Chapa contract.”





[4]
Chapa also filed suit against Ruiz’s wife for her executing the Ruiz-Nguyen
deed, but she was later nonsuited from the case.





[5]
The trial court also ordered that Nguyen and Southwestern were “subrogated in
the amount of $25,984.41 to the lien rights and priorities of the ad valorem
taxing authorities of Harris County, Texas for taxes paid for the property . .
. for tax years 2004, 2005, 2006 and 2007.”  The trial court further ordered
that the liens by subrogation in favor of Nguyen and Southwestern were “judicially
foreclosed against the property . . .  if payment of the subrogated sums is not
made available by . . .  Chapa . . . within 30 days from the date this judgment
is final and all appeals are exhausted.”